ACCEPTED
15-25-00088-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 6:36 PM
CHRISTOPHER A. PRINE
CLERK

LEHOTSKY KELLER COHN LLP

408 W. 11th Street, 5th Floor
Austin, TX 78701
Scott A. Keller
scott@lkcfirm.com

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/20/2025 6:36:25 PM
CHRISTOPHER A. PRINE
Clerk

August 20, 2025

**VIA E-FILE**

Christopher R. Prine
Clerk of Court
Fifteenth Court of Appeals
P.O. Box 12852
Austin, Texas 78711

   RE: *In re AstraZeneca Pharmaceuticals LP*, No. 15-25-00088

Dear Mr. Prine:

   This mandamus action to transfer a case alleging violations of the Texas Medicaid Fraud Prevention Act ("TMFPA") from Harrison County to Travis County is just one of multiple cases that affiliated entities—represented by the same counsel—have brought against different defendants.[1] On August 11, 2025, one of these affiliated entities, Health Choice Alliance, LLC, after years of inaction, filed a "Notice of Nonsuit without Prejudice" in a Travis County action against Eli Lilly and Company, Inc. Ex. A.[2] It then refiled in Harrison County along with the State of Texas. Eli Lilly filed a motion to strike the notice of nonsuit, Ex. B, to which both the State and Health Choice Alliance responded. Exs. C, D. Relator AstraZenaca submits these filings to this Court's attention to underscore the live underlying dispute about the proper venue for these TMFPA claims, and the need for clarity on this issue.

         Respectfully submitted,

         */s/ Scott A. Keller*
         Scott A. Keller

cc: All Counsel of Record (via efile)

---

[1] *See* Mandamus Petition at 3.

[2] The case is *The State of Texas ex rel. Health Choice Alliance, LLC v. Eli Lilly and Company, Inc.*, Cause No. D-1-GN-19-007484.

# Exhibit A

to Relator's letter of August 20, 2025

8/11/2025 2:03 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-007484
Stefany Vega juarez

**CAUSE NO. D-1-GN-19-007484**

| | |
|---|---|
| THE STATE OF TEXAS, <br><br> *ex rel.* <br><br> HEALTH CHOICE ALLIANCE, LLC <br><br> Plaintiff, <br><br> v. <br><br> ELI LILLY AND COMPANY, INC., <br><br> Defendant. | IN THE DISTRICT COURT <br><br> 201ST JUDICIAL DISTRICT <br><br> TRAVIS COUNTY, TEXAS |

## PLAINTIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE

Pursuant to Rule 162 of the Texas Rules of Civil Procedure, Plaintiff Health Choice Alliance, LLC ("Plaintiff") hereby gives notice to this Court and to all parties that Plaintiff no longer wishes to prosecute its claims against Defendant Eli Lilly and Company, Inc. ("Defendant"), before this Court, and Plaintiff non-suits same without prejudice against refiling.

This Notice of Nonsuit Without Prejudice ("Notice") disposes of all of Plaintiff's claims in this litigation and, because Defendant has not asserted any claims or counterclaims in this matter, the Notice disposes of this litigation in whole.

Plaintiff has consulted with the State of Texas and represents that the State has consented to the filing of this Notice.

Pursuant to Rule 162, this nonsuit is effective immediately upon the filing of this Notice, and no order is required.

**PLAITIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE – Page 1**

Dated:  August 11, 2025                  Respectfully submitted,

*/s/ Sam Baxter*
Samuel F. Baxter (co-lead counsel)
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(903) 923-9000
Fax: (903) 923-9099

*/s/ Mark Lanier*
Mark Lanier (co-lead counsel)
Zeke DeRose
Jonathan Wilkerson
THE LANIER FIRM
10940 W. Sam Houston Pkwy N
Houston, TX 77064
(800) 723-3216
Fax: (713) 659-2204

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been served on

Defendant through the Court's e-filing system.

*/s/ Zeke DeRose*
Zeke DeRose

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Audrey Moore on behalf of W. Lanier
Bar No. 11934600
audrey.moore@lanierlawfirm.com
Envelope ID: 104217088
Filing Code Description: FINAL OR PARTIAL DISPOSITION ORDER
Filing Description: PLAINTIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE
Status as of 8/12/2025 1:06 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Wilkerson | | jonathan.wilkerson@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |
| Courtney Walton | | courtney.walton@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |
| Alex J. Brown | | alex.brown@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |
| Emily Olson | | Emily.Olson@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |
| Susan Miller | | susan.miller@oag.texas.gov | 8/11/2025 2:03:00 PM | SENT |
| Samuel Baxter | | sbaxter@mckoolsmith.com | 8/11/2025 2:03:00 PM | SENT |
| W MarkLanier | | wml@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |
| Cynthia Lu | | cynthia.lu@oag.texas.gov | 8/11/2025 2:03:00 PM | ERROR |
| Jennifer Truelove | | jtruelove@mckoolsmith.com | 8/11/2025 2:03:00 PM | SENT |
| Eric Halper | | ehalper@mckoolsmith.com | 8/11/2025 2:03:00 PM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 8/11/2025 2:03:00 PM | SENT |
| Zeke DeRose | | Zeke.derose@lanierlawfirm.com | 8/11/2025 2:03:00 PM | SENT |

Associated Case Party: ELI LILLY AND COMPANY INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Yaman Desai | | ydesai@lynnllp.com | 8/11/2025 2:03:00 PM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 8/11/2025 2:03:00 PM | SENT |
| SCOTT SMOOT | | ssmoot@lynnllp.com | 8/11/2025 2:03:00 PM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 8/11/2025 2:03:00 PM | SENT |

# Exhibit B

to Relator's letter of August 20, 2025

8/13/2025 12:01 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-007484
Candy Schmidt

**CAUSE NO. D-1-GN-19-007484**

|  |  |
|---|---|
| THE STATE OF TEXAS, *ex rel.* HEALTH CHOICE ALLIANCE, LLC<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY, INC.,<br><br>Defendant. | IN THE DISTRICT COURT<br><br><br><br>201ST JUDICIAL DISTRICT<br><br><br><br>TRAVIS COUNTY, TEXAS |

**DEFENDANT ELI LILLY AND COMPANY'S**
**MOTION TO STRIKE PLAINTIFF'S DEFECTIVE NOTICE OF NONSUIT**

**TABLE OF CONTENTS**

Introduction.......................................................................................................... 1

Background ........................................................................................................... 4

Argument .............................................................................................................. 8

I.     HCA's Notice Is Statutorily Defective and Cannot Result in Dismissal Under the TMFPA. .............................................................................................................. 8

II.    HCA Cannot Cure Its Defective Notice.......................................................... 9

Conclusion .......................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Est. of Allen ex rel. Allen v. Scott & White Clinic*,
2011 WL 2993259 (Tex. App.–Austin July 21, 2011) .......................................................3, 12

*U.S. ex rel. Brasher v. Pentec Health, Inc.*,
338 F. Supp. 3d 396 (E.D. Penn. 2018) .................................................................................11

*U.S. ex rel. Carroll v. Planned Parenthood Gulf Coast, Inc.*,
21 F. Supp. 3d 825 (S.D. Tex. 2014) .....................................................................................11

*Cox v. Vanderburg*,
2021 WL 4055487 (Tex. App.—Texarkana Sept. 7, 2021, pet. denied) .................................12

*Epps v. Fowler*,
351 S.W.3d 862 (Tex. 2011) ...............................................................................................4, 12

*U.S. ex rel. Fitzgerald v. Novation, LLC*,
2008 WL 9334966 (N.D. Tex. Sept. 17, 2008) ......................................................................11

*Freeman v. Town of Flower Mound*,
173 S.W.3d 839 (Tex. App.—Fort Worth 2005, no pet.) ........................................................12

*U.S. ex rel. HCA v. Eli Lilly & Co., Inc.*,
4 F.4th 255 (5th Cir. 2021) .........................................................................................4, 6, 7, 14

*Int'l Game Tech., Inc. v. Second Jud. Dist. Ct. of Nev.*,
127 P.3d 1088 (Nev. 2006) ....................................................................................................11

*Johnson v. City of Mesquite*,
1999 WL 72312 (Tex. App.—Dallas Feb. 12, 1999, no pet.) .................................................11

*U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*,
912 F. Supp. 2d 618 (E.D. Tenn. 2012) .................................................................................11

*U.S. ex rel. Odom v. Se. Eye Specialists, PLLC*,
2021 WL 790889 (M.D. Tenn. Feb. 24, 2021) ....................................................................3, 11

*Ramirez v. Collier, Shannon, Scott, PLLC*,
123 S.W.3d 43 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ......................................12

*Sanchez v. Fiedler*,
2016 WL 4272111 (Tex. App.—Austin Aug. 11, 2016, pet. denied) ......................................13

*In re Sanofi-Aventis U.S. LLC*,
  711 S.W.3d 732 (Tex. App.—Austin [15th Dist.] 2025) (orig. proceeding)..............2, 4, 7, 13

*In re Sentry Ins. a Mut. Co.*,
  2021 WL 2448083 (Tex. App.—Amarillo June 15, 2021) (orig. proceeding)...................3, 10

*In re Team Rocket, L.P.*,
  256 S.W.3d 257 (Tex. 2008).....................................................................................1, 12

*Town Hall Estates–Arlington, Inc. v. Cannon*,
  331 S.W.3d 793 (Tex.App.-Fort Worth 2010, no pet.)............................................................12

**Statutes**

Tex. Hum. Res. Code Ann. § 36.102 .................................................................... *passim*

Tex. Hum. Res. Code Ann. § 36.104 .........................................................3, 10, 11, 14

**Rules**

Tex. R. Civ. P. 162...............................................................................................2, 8

**INTRODUCTION**

Plaintiff Health Choice Alliance, LLC ("HCA")'s Notice of Nonsuit violates the clear terms of the Texas Medicaid Fraud Prevention Act[1] ("TMFPA") in a blatant attempt to forum shop, "a practice [the Texas Supreme Court has] repeatedly prohibited." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 260 (Tex. 2008). The Court should strike the defective Notice. Should HCA attempt to cure its statutory violations through a refiled Notice of Nonsuit, Lilly respectfully requests the opportunity to respond through briefing and a hearing.

HCA's Notice of Nonsuit represents the latest maneuver by a Wall Street investment fund to "undermine common industry practices the federal government has determined are, in this particular case, appropriate and beneficial" to patients and payers. Ex. A, U.S. Br., Case No. 5:17-cv-123, Dkt. 192, at 16 (E.D. Tex.). In its Petition filed nearly six years ago, HCA alleges that routine support services Lilly has offered to patients for three of its lifesaving medicines—reimbursement assistance and nurse educators who have helped patients learn how to use those prescribed injectable medicines—are "kickbacks" to doctors. Since 2016, this corporate relator has advanced the same allegations about patient support through numerous shell companies against more than thirty other pharmaceutical manufacturers in seven federal judicial districts across the country, all of which have been dismissed with prejudice. Indeed, two courts—the Eastern District of Texas and the New Jersey Superior Court—have already dismissed the same allegations HCA advances against Lilly, and both decisions were affirmed on appeal.

HCA nonetheless continues its vexatious litigation: in 2019, it filed nearly identical claims to those from the Eastern District of Texas case in this Court. Just as it had in the federal action, the State of Texas investigated and, for the second time, affirmatively declined to intervene. Then,

---

[1]    After HCA filed suit, the statute was renamed to the Texas Health Care Program Fraud Prevention Act.

after three years of failing to take any action to advance its own claims, HCA's counsel reemerged last summer with a threat: Lilly could voluntarily agree to transfer this case to Harrison County, where venue is plainly lacking but is more favorable to HCA, or HCA would nonsuit and refile in Harrison County with the State. Relator followed a similar playbook in related cases against other pharmaceutical manufacturers, resulting in the Fifteenth Court of Appeals recently granting mandamus and transferring one of those cases to this Court. *In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732, 741 (Tex. App.—Austin [15th Dist.] 2025) (orig. proceeding). (Another transfer motion—from Harrison County to this Court—is currently on mandamus.) HCA failed to prosecute its case against Lilly for another year. But now—after nearly 1,500 days of failing to prosecute its case—HCA purports to follow through with its threat. Under the guise of a Rule 162 notice of voluntary dismissal, HCA claims to nonsuit this action "effective immediately upon the filing of this Notice," with "no order required." Simultaneously, HCA filed an amended petition in Harrison County. The Harrison County petition purports to be brought by both HCA *and* the State of Texas—despite Texas' prior express decisions not to intervene in this case.

The Court should reject HCA's latest attempt to evade this Court and final resolution of its meritless claims for two independent reasons.

***First***, the Court should strike HCA's attempted nonsuit, which cannot result in dismissal of this case under the TMFPA. HCA presents its Notice as a self-effectuating Rule 162 notice of voluntary dismissal, but a dismissal is not self-effectuating in a TMFPA case. Under the TMFPA, the action is not subject to dismissal unless "the court and the attorney general consent in writing to the dismissal ***and state their reasons for consenting***." Tex. Hum. Res. Code Ann. § 36.102(e) (emphasis added). Neither condition has occurred here: neither the Court nor the Attorney General has consented to dismissal in writing, let alone given any "reasons for consenting" to the nonsuit.

2

*Id.* Thus, under the plain terms of the TMFPA this case cannot be dismissed pursuant to HCA's defective Notice.

***Second***, the Court should further find that neither HCA nor the State can cure the defective nonsuit, as Texas prohibits their forum shopping efforts. At a minimum, due process would require briefing and a hearing on whether the case may be dismissed should HCA or the State attempt to cure the defective nonsuit.

After all, the State of Texas now seeks to "join" HCA's refiled case in Harrison County, while overlapping claims are pending in this Court. But ***this Court***—not Harrison County—has "dominant jurisdiction" over the refiled claims: this is the first-filed of the two actions, involving the same real parties in the interest, alleging the same kickback theory. *In re Sentry Ins. a Mut. Co.*, 2021 WL 2448083, at *2 (Tex. App.—Amarillo June 15, 2021) (orig. proceeding). Thus, this action cannot proceed in Harrison County. Under the TMFPA, if the State later wanted to join HCA's claims, it would need to move for leave to intervene in ***this*** lawsuit and support that motion with a showing of "good cause." Tex. Hum. Res. Code Ann. § 36.104(b-1).

Texas' decision not to intervene here—and not even try to meet the "good cause" requirement—speaks volumes. *Id.* Nor could it, as nothing has changed in the case since it (twice) decided against intervening: "good cause" must mean something more than "the State has changed its mind." *U.S. ex rel. Odom v. Se. Eye Specialists, PLLC*, 2021 WL 790889 (M.D. Tenn. Feb. 24, 2021) (denying government intervention for lack of good cause in FCA case). If the State were permitted to join HCA's refiled case in Harrison County, rather than showing good cause here, this would end-run the "good cause" requirement, rendering it "meaningless," in violation of binding precedent. *E.g.*, *Est. of Allen ex rel. Allen v. Scott & White Clinic*, 2011 WL 2993259 (Tex. App.—Austin July 21, 2011) ("We could not adopt a construction that would effectively

3

eviscerate a clear statutory mandate."). That is particularly true here, where Texas adamantly enforces a strong prohibition against the use of voluntary nonsuits to forum shop. *E.g.*, *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (so holding). Permitting the State to rubberstamp HCA's nonsuit in service of forum shopping would eviscerate the clear statutory standard for State intervention.

Here, HCA chose Travis County, the "default venue" under the TMFPA, and where this action has been pending for six years. *In re Sanofi-Aventis*, 711 S.W.3d at 739. It does not get another bite at the venue apple—after over four years of unjustified delay—merely to continue to abuse the judicial process with forum shopping in violation of Texas law. This Court should reject HCA's attempt to dismiss its case.

## BACKGROUND

Almost a decade ago, Venari Partners, LLC d/b/a National Health Care Analysis Group ("NHCA") created a series of shell companies to file clone *qui tam* complaints against thirty-eight companies in the healthcare industry, each alleging the same supposed False Claims Act violations on behalf of the United States, Texas, and dozens of other states. *See* Ex. A, U.S. Br., Case No. 5:17-cv-123, Dkt. 192 at 2. NHCA claimed that Lilly (and dozens of other companies it sued) offered free nurse educators and reimbursement support in connection with their medicines as improper inducements to prescribers. *Id.* Even though these suits were filed in the name of the federal and state governments on whose behalf NHCA sued, government regulators and enforcers assessed these allegations and affirmatively voiced their support for these services, asking courts to dismiss NHCA's cases in every forum in which they were brought. *E.g.*, *U.S. ex rel. HCA v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 268 (5th Cir. 2021) ("[T]he government concluded that the services provided by Eli Lilly … are not only beneficial but also lawful."). Nevertheless, NHCA

(through its affiliate HCA) has now four times sued Lilly, claiming that the routine patient support services Lilly offered for its medicines amounted to kickbacks.

*First,* in June of 2017, HCA filed a nearly identical case in federal court (the "Federal Action"). *See U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co., Inc.*, 2018 WL 4026986 (E.D. Tex. July 25, 2018), *r&r adopted*, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018). Both the United States *and the State of Texas declined to intervene*. *See* Ex. B, Case No. 5:17-cv-123, Dkt. 8 (Oct. 30, 2017). The United States moved to dismiss HCA's case, arguing that relator should not be permitted to attack programs the federal government has determined are beneficial. Ex. A, Case No. 5:17-CV-123, Dkt. 192, at 16 (E.D. Tex. Dec. 17, 2018). In its motion, the United States noted that "federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication." *Id.* Moreover, the United States had the opportunity to "collect[] and review … tens of thousands [of] documents from the defendants and third parties," "expend[ing] substantial resources investigating NHCA Group matters." *Id.* at 6, 14. "[B]ased on its extensive investigation," the "government has concluded that the *relators' allegations lack sufficient factual and legal support*." *Id.* at 14[2]; *see also id.* at 6 (explaining that in the government's view, HCA's claims challenged "common industry practices the federal government has determined are, in this particular case, appropriate and beneficial to federal healthcare programs and their beneficiaries.").

---

[2] *See also id.* at 14-15 ("The government's investigations included, among other things, the collection and review of tens of thousands [of] documents from the defendants and third parties and interviews of numerous witnesses, including prescribing physicians. The government also has had extensive discussions with relators' counsel and has reviewed various information that they have provided. In addition, the government has consulted with subject-matter experts at HHS-OIG about the relators' allegations and the applicability of regulatory safe harbors and government-issued industry guidance.").

The Court granted the United States' motion to dismiss, and the Fifth Circuit affirmed. *HCA*, 4 F.4th at 267 (holding that district court properly granted United States' motion to dismiss where it determined "Health Choice's allegations 'lack sufficient merit to justify the cost of investigation and prosecution'"). By the time the Court granted the motion to dismiss, Lilly had produced over ten thousand pages of documents in discovery, available for the State of Texas to review.

***Second***, in 2019, following the dismissal of the Federal Action at the federal government's request, HCA brought the same allegations against Lilly in New Jersey state court under New Jersey law. The court dismissed that complaint with prejudice under the public disclosure and first-to-file bars and for failure to plead any purported fraud with particularity. On March 1, 2024, the New Jersey court of appeals affirmed the dismissal. *See* Ex. C, Unpublished Op. (affirming judgment).[3]

***Third***, HCA filed this suit under seal in October of 2019. *See* Pet. In April 2020, the State of Texas filed a notice stating that it declined to intervene—despite it having been on notice of HCA's allegations since at least June 2017 and having even had the benefit of discovery Lilly produced in the Federal Action. *See* Notice Declining Intervention.[4] The case was then unsealed and served on Lilly in June 2020, after which Lilly filed a plea to the jurisdiction, arguing that the TMFPA's first-to-file bar required dismissal given the pendency of the Federal Action at the time the Petition was filed. *See* Mot. to Dismiss. After Lilly's motion was fully briefed, Judge Timothy Sulak heard oral argument, but decided to "stay the . . . case[]" without "ruling on the [m]otion[] to dismiss" while the Fifth Circuit considered HCA's appeal in the Federal Action. Ex. D, 2020-

---

3    https://www.njcourts.gov/system/files/court-opinions/2024/a2731-20a2733-20.pdf.
4    Since then, no party has produced any discovery—let alone new discovery—to inform Texas about any new facts that could change its initial assessment.

11-19 Letter at 1. Judge Sulak instructed the parties to submit an order that would "stay" the case "pending final determination[] of the disputes originally filed in federal court by Relator against these Defendants, or further orders of this court." *Id.* HCA submitted a proposed order on December 11, 2020, proposing "that the parties [will] provide the Court with any updates about the" Federal Action. *See* Ex. E, 2020-12-11 Proposed Order at 1. The Fifth Circuit affirmed the district court's dismissal of the Federal Action on July 7, 2021. *HCA*, 4 F.4th at 261.

More than four years have passed, and HCA has taken ***no action*** to prosecute this case. Instead, HCA pursued a blatant forum shopping strategy against other pharmaceutical manufacturers in Texas courts on the same cookie cutter claims. The TMPFA sets Travis County as the "default venue" under the statute. *In re Sanofi-Aventis U.S.*, 711 S.W.3d at 739. Nonetheless, HCA sued four other companies in Harrison County: Astra-Zeneca (Harrison Cnty. Dist. Ct., No. 22-0426, May 25, 2022); Gilead Sciences (Harrison Cnty. Dist. Ct., No. 23-0800, Oct. 2, 2023), Novartis (Harrison Cnty. Dist. Ct., No. 23-0276, Apr. 5, 2023), and Sanofi-Aventis (Harrison Cnty. Dist. Cnty., No. 23-0698, July 21, 2023). Two of those defendants moved to transfer to this Court. On March 27, 2025, the Court of Appeals for the Fifteenth Circuit granted Sanofi's mandamus petition, requiring the Sanofi-Aventis case to be transferred to Travis County where it belonged. *In re Sanofi-Aventis U.S.*, 711 S.W.3d at 741. Likewise, the denial of AstraZeneca's transfer motion is currently before the Fifteenth Circuit on mandamus. *In re Astrazeneca Pharmaceuticals LP*, No. 15-25-00088-CV (Tex. App.—Austin [15th Dist.]).

Over a year ago, last summer, HCA briefly broke its (by then) three years of silence with respect to Lilly to threaten it with the same forum shopping. On June 25, 2024, an attorney for HCA contacted Lilly's counsel asking that Lilly agree to transfer this matter to Harrison County. HCA represented that if Lilly did not agree to transfer the case to Harrison County, HCA would

voluntarily dismiss this action and refile it in Harrison County with intervention by the Texas attorney general. On August 5, 2024, HCA's counsel again contacted Lilly, reiterating its demand.

Another year passed and HCA—and the State of Texas—took no action.

Then, on August 11, 2025, HCA filed the notice of nonsuit. *See* Not. of Nonsuit. HCA purports to file the nonsuit "[p]ursuant to Rule 162 of the Texas Rules of Civil Procedure," the general, default provision for nonsuits, rather than the more specific requirements in the TMFPA for dismissing this action. Tex. Hum. Res. Code Ann. § 36.102(e). Nearly simultaneously, HCA, now with the State joining HCA on the signature block, refiled its lawsuit in Harrison County, choosing to try to forum shop this action rather than litigating in this Court, the "default" venue for TMFPA claims, where HCA originally filed this action six years ago.

## ARGUMENT

The Court should deny HCA's transparent effort to forum shop in violation of the TMFPA's text and Texas precedent. First, the Court should strike HCA's Notice of Nonsuit, as it violates the TMFPA's requirements for dismissal. Second, the Court should find that neither HCA nor the State can cure the error; at a minimum, due process requires that Lilly be afforded an opportunity to respond to any attempt by the State to cure its defect, including with a hearing.

## I.     HCA'S NOTICE IS STATUTORILY DEFECTIVE AND CANNOT RESULT IN DISMISSAL UNDER THE TMFPA.

HCA erroneously frames its Notice of Nonsuit as a self-executing voluntary nonsuit under the Texas Rules of Civil Procedure. In doing so, HCA fails to comply with the more specific, on-point statutory provision governing dismissal here: the TMFPA provides that "[a]n action under this subchapter may be dismissed *only if* the court and *the attorney general* consent in writing to the dismissal *and state their reasons for consenting*." Tex. Hum. Res. Code Ann. § 36.102(e) (emphases added). None of these conditions have occurred. While HCA notes that it "has

8

consulted with the State of Texas and represents that the State has consented to the filing of this Notice," the State itself has provided nothing in writing—let alone explained its "reasons for consenting." *See* Not. of Nonsuit. As a result, the Notice is statutorily defective and cannot result in dismissal.

HCA's own filings confirm its nonsuit filing is ineffective. Just last year in a brief filed in the Texas Supreme Court, one of HCA's affiliates (Health Choice Advocates, LLC) argued (through the same counsel) that "for an FCA or T[M]FPA dismissal to be effective, the court necessarily must provide 'written consent'—that is, *an order*," and the attorney general must provide its "*reasons for consenting.*" *Resp. Br. on the Merits*, *In re Gilead Sciences, Inc*, 2024 WL 5301422, at *26 (Tex. Dec. 23, 2024) (emphasis in original) (second quote citing Tex. Hum. Res. Code Ann. § 36.102(e)). Because HCA had not obtained either, under "the express requirements of the federal and state statutes HCA was enforcing, HCA could not have terminated [its] action unilaterally, via a self-executing notice." *Id.* at *26. The same is true here, and HCA is judicially estopped from taking a contrary position.

Because the Notice of Voluntary Dismissal fails to satisfy the TMFPA § 36.102(e), it has no effect, and the Court should not dismiss this case on this basis.

## II. HCA CANNOT CURE ITS DEFECTIVE NOTICE.

HCA "no longer wishes to prosecute its claims against [Lilly] ***before this Court***," and so seeks dismissal without prejudice so that it can refile in its preferred venue—Harrison County—with the State. *See* Not. of Nonsuit (emphasis added). Texas law flatly prohibits HCA and the State from executing the very forum shopping maneuver they transparently seek here—evasion of perceived negative outcomes, statutory prohibitions, and this Court's jurisdiction.

At the outset, because the "action" is still pending in this court, the doctrine of dominant jurisdiction prevents HCA or the State from bringing the same claims in a different forum. "In

9

instances where inherently interrelated suits are pending in two counties, and venue is proper in either county, the court in which suit was first filed acquires dominant jurisdiction." *In re Sentry Ins. a Mut. Co.*, 2021 WL 2448083, at \*2. Venue is not proper in Harrison County, but regardless, as the first-filed court, this Court maintains dominant jurisdiction over HCA's claims—by a span of more than six years. And to join HCA in its claims, the State would need to intervene in this Action, not file an overlapping action in another forum while this one is pending. *See id.*

Permitting this nonsuit would eviscerate the specific process that the Texas legislature requires HCA and the State to follow in a TMFPA action. HCA must file a complaint under seal with the State, and the State then has 180 days to decide whether or not to intervene. *See* Tex. Hum. Res. Code Ann. § 36.102(b); *id.* § 36.102(c) ("The state may elect to intervene and proceed with the action not later than the 180th day after the date the attorney general receives the petition and the material evidence and information.").[5] Once the 180-day window closes, or the State declines to intervene, the TMFPA provides that the court may not "permit the state to intervene at a later date" unless the State can show "good cause." *Id.* § 36.104(b-1). This carefully constructed procedure provides both a statutory and judicial check on the State's decision to intervene in a TMFPA action, ensuring that defendants are not subject to the severe prejudice of State prosecution where the government has sat on its hands—or previously determined the action did *not* warrant intervention—absent good reasons for the delay.

Here, the State has *twice* affirmatively chosen *not* to intervene in this action after opportunity to investigate HCA's claims. It first did so in the federal action. Ex. B, Case No. 5:17-cv-123, Dkt. 8 (Oct. 30, 2017). And it did so again here, on April 24, 2020. *See* Tex. Not.

---

[5] *See also id.* 36.104(a) ("Not later than the last day of" the statutory 180-day window, "or an extension of that period as provided by Section 36.102(d), the state shall: (1) proceed with the action; or (2) notify the court that the state declines to take over the action.").

10

of Election to Decline Intervention at 1 ("[T]he State of Texas … notifies the Court of its decision not to intervene in this action."). Five more years and three months have passed. Thus, in order to intervene in this action, the State would need to show "good cause" for its delay and different decision now through competent evidence, such as affidavits. Tex. Hum. Res. Code Ann. § 36.104(b-1).

The State cannot meet this standard. In Texas, "[a] good cause analysis turns on the degree of diligence a plaintiff uses," *Johnson v. City of Mesquite*, 1999 WL 72312, at *2 (Tex. App.—Dallas Feb. 12, 1999, no pet.), cannot be "founded on an inadequate investigation, or pretextual," *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct. of Nev.*, 127 P.3d 1088, 1100 (Nev. 2006), or based on mere reconsideration, *Odom, PLLC*, 2021 WL 790889 (denying government intervention for lack of good cause in FCA case). The State has shown no diligence whatsoever; the case has languished ever since the State declined to intervene over five years ago. Texas could not have reviewed any new discovery from Lilly; there has been none. Its new Harrison County petition is based on the very same type of programs challenged in this case—nursing support and reimbursement support—that it has known about for more than eight years. *E.g.*, *Odom*, 2021 WL 790889 (denying motion to intervene where government did not present new evidence justifying decision).[6]

Because the State could not show good cause for intervention, it decided not to try. Instead, according to HCA, the State consented to HCA's voluntary dismissal of this action and refiling

---

[6] *See also, e.g.*, *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396 (E.D. Penn. 2018) (denying federal government request to extend sealing period for investigation and finding no good cause where government requested ten extensions and case was filed five years prior); *U.S. ex rel. Carroll v. Planned Parenthood Gulf Coast, Inc.*, 21 F. Supp. 3d 825, 827 (S.D. Tex. 2014) (state declined to intervene after sealing period had lapsed after multiple renewals); *U.S. ex rel. Fitzgerald v. Novation, LLC*, 2008 WL 9334966 (N.D. Tex. Sept. 17, 2008) (holding state declined to intervene by silence); *see also U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*, 912 F. Supp. 2d 618 (E.D. Tenn. 2012) ("'[G]ood cause' is not established merely upon a showing that the Government was overburdened and had not had a chance to address the complaint.").

11

with HCA in Harrison County, where HCA is hoping for a more favorable forum than this Court and has been fighting to move its cases for years now. That is improper. The court "should not adopt a construction that would render a law or provision meaningless or absurd." *Freeman v. Town of Flower Mound*, 173 S.W.3d 839, 840 (Tex. App.—Fort Worth 2005, no pet.). That is precisely what HCA seeks to do here: permit the State to eviscerate both the 180-day statutory deadline for the State to intervene and the statutory "good cause" requirement to reopen that deadline by "consenting" to voluntary dismissal and then refiling. The Court should deny the request. *Estate of Allen ex rel. Allen v. Scott & White Clinic*, 2011 WL 2993259 (Tex. App.–Austin July 21, 2011) (allowing tolling or restarting the 120-day period for service of expert report by nonsuiting and refiling would undermine the legislative intent); *Ramirez v. Collier, Shannon, Scott, PLLC,* 123 S.W.3d 43, 52 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Town Hall Estates–Arlington, Inc. v. Cannon*, 331 S.W.3d 793, 796 (Tex.App.-Fort Worth 2010, no pet.) (noting that allowing claimant to file and nonsuit suit as many times as he wanted within statute of limitations without filing expert report would "thwart" legislative purposes of reducing frequency of healthcare claims, decreasing costs of those claims, and ensuring awards are related to actual damages).

Worse, HCA's nonsuit would eviscerate these statutory protections only to green light the kind of naked forum shopping Texas courts prohibit. The Texas Supreme Court has "repeatedly prohibited … forum shopping." *In re Team Rocket*, 256 S.W.3d 257, 260. Indeed, Texas prohibits forum shopping in this exact context: a plaintiff may not voluntarily nonsuit "to avoid an unfavorable ruling on the merits." *Epps*, 351 S.W.3d at 870; *see also Cox v. Vanderburg*, 2021 WL 4055487, at *12 (Tex. App.—Texarkana Sept. 7, 2021, pet. denied) (requiring dismissal with prejudice as sanction for "a nonsuit taken to avoid an unfavorable ruling on the merits"); *In re*

*Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) ("a plaintiff [may not] use the procedural vehicle of nonsuiting a case to avoid unfavorable venue rulings."); *Sanchez v. Fiedler*, 2016 WL 4272111, at \*3 (Tex. App.—Austin Aug. 11, 2016, pet. denied) (prohibiting nonsuits used to "enable a party subject to sanctions to avoid them").

HCA's intent is clear: this corporate relator has a well-documented history of procedural maneuvering in efforts to evade adverse decisions on the merits of its claims. It has filed and dismissed many related claims in federal courts against other manufacturers—seeking to evade the government's dismissal of its claims by trying their hand in state courts.[7] In Texas, HCA has filed in or sought transfer to Harrison County even without any meaningful connection to that forum, and despite the fact that the TMFPA specifically sets ***this*** county as the "default" venue. *See In re Sanofi*, 711 S.W.3d at 739 (noting relator "apparently recogniz[ed] [its] deficiency of proof" of venue). This is the precise context in which Texas appellate courts prohibit nonsuits. *Supra* pp.12-13.

\* \* \*

The Court should reject HCA's—and the State's—efforts to evade its dominant jurisdiction in search of a forum they perceive to be more favorable. To the extent that HCA and/or the State try to cure the violation by having the State explain its reasons for consenting, or if the State tries to establish "good cause" to intervene, Lilly requests the opportunity to respond in writing and at a hearing, both as a matter of due process, and so that the Court can evaluate whether they have met the required statutory standard. *See* Tex. Hum. Res. Code § 36.102(e).

---

[7] *See, e.g.*, *U.S. ex rel. SAPF & Brousseau v. Amgen LLC*, No. 16-cv-5203, ECF 19 (voluntary dismissal) (E.D. Pa. Feb. 8, 2019), *id.* ECF 21 (Feb. 11, 2019) (order); *U.S. ex rel. NHCAOTZ, LLC, v. Otsuka Holdings Co.*, 1:17-cv-966, ECF 35 (voluntary dismissal) (N.D. Ill. Jan. 24, 2019); *id.* ECF 37 (dismissal order) (N.D. Ill. Jan. 29, 2019); *U.S. ex rel. Miller v. AbbVie*, 3:16-cv-211, ECF 58 (voluntary dismissal) (N.D. Tex. March 13, 2019); *id.* 60 (May 9, 2019); *Health Choice Advocates v. Gilead Sciences*, 5:17-cv-121, ECF 246 (voluntary dismissal) (E.D. Tex. June 14, 2017), *id.* ECF 249 (order); *Health Selection Group, LLC v. Novartis AG*, 5:18-cv-60, ECF 21 (voluntary dismissal) (E.D. Tex. Nov. 6, 2019); *id.* ECF 22 (order) (March 11, 2020).

Surely HCA cannot object to these procedural protections: Just a few years ago, HCA told the Fifth Circuit that governments do not have "unfettered discretion" to dismiss *qui tam* False Claims Act cases; rather, a court must hold "an actual 'hearing'" and scrutinize the government's reasons for dismissal. *See Appellants' Reply Br.* at 1, *U.S. ex rel. Health Choice Alliance, LLC v. Eli Lilly and Co.*, No. 19-40906, (5th Cir. Mar. 26, 2020). HCA previously took the position before the Fifth Circuit that a court must launch "a meaningful judicial inquiry into whether the government's" decision to dismiss—"under the totality of the circumstances at hand—was arbitrary and capricious," citing the provisions of the federal False Claims Act that require a hearing before an action can be dismissed. *Id.* at 3-4; *see also HCA*, 4 F.4th 267-269 (applying "the strict" "arbitrary and capricious" standard HCA urged). Here, the TMFPA requires ***both*** this Court and the Attorney General to articulate ***reasons*** for the dismissal, and the State's reasons also must be evaluated for their sufficiency. *See* Tex. Hum. Res. Code Ann. § 36.102(e). And to join HCA in its claims the State must show "good cause" before it can intervene. *Id.* § 36.104(b-1). As explained, the State provides no reasons for its supposed consent here, nor does it purport to establish "good cause" for intervention. The Notice should be struck. Should HCA and/or the State attempt to cure their statutory violations, the Court should order briefing and a hearing in order to evaluate the sufficiency of any alleged justifications they may offer.

## CONCLUSION

For the foregoing reasons, Lilly respectfully requests the Court grant Lilly's motion and strike HCA's Notice of Nonsuit.

DATE: August 12, 2025

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 – Telephone
(214) 981-3829 – Facsimile


Jeremy A. Fielding, P.C.
Texas Bar No. 24040895
jeremy.fielding@kirkland.com
Kasdin M. Mitchell, P.C.
Texas Bar No. 24135030
kasdin.mitchell@kirkland.com
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, Texas 75205
Telephone: (214) 972-1770
Fax: (214) 972-1771


**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

15

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served *via e-file Texas* on all counsel of record on August 12, 2025.

/s/ Christopher J. Schwegmann
Christopher J. Schwegmann

# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.* *ex rel*. HEALTH CHOICE ALLIANCE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY & COMPANY, INC., HEALTHSTAR CLINICAL EDUCATIONAL SOLUTIONS, LLC, VMC BIOMARKETING, COVANCE, INC., & UNITED BIOSOURCE CORPORATION <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 5:17-cv-123-RWS-CMC |

**THE UNITED STATES'**
**MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT**

Pursuant to 31 U.S.C. §3730(c)(2)(A), the United States of America ("United States" or "Government") hereby moves to dismiss this *qui tam* action brought on behalf of the United States by Health Choice Alliance, LLC under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA").[1]  As discussed more fully below, this action was brought by a professional relator who has filed eleven *qui tam* actions throughout seven judicial districts, each raising substantially the same allegations under the FCA.  Having completed its investigation, and finding the allegations to lack sufficient merit to justify the cost of investigation and prosecution and otherwise to be

---

[1]  Relators have brought claims on behalf of certain Medicaid-participating states under their respective state false claim statutes.  Undersigned counsel does not represent the named state plaintiffs; however, Kerry Muldowney Ascher, counsel for the state of Texas and representative of the National Association of Medicaid Fraud Control Units, has represented to the United States that all named plaintiff states consent to the United States' motion to dismiss so long as it is without prejudice as to the states, with the exception of New Jersey, which takes no position on the motion.

1

contrary to the public interest, the United States now seeks to dismiss these actions. Accordingly, the United States requests that this action be dismissed with prejudice as to Health Choice Alliance, LLC, and without prejudice as to the United States.

## I.     BACKGROUND AND PROCEDURAL HISTORY

### A. The NHCA Group *Qui Tam* Actions

This *qui tam* action was filed on June 15, 2017, by Health Choice Alliance, LLC, a limited liability company created by Venari Partners, LLC, dba National Health Care Analysis Group ("NHCA Group"). NHCA Group is another limited liability company that is itself comprised of member limited liability companies formed by investors and former Wall Street investment bankers. *See* accompanying Declaration of Brian J. McCabe ("McCabe Dec."), ¶¶ 2-3 and Exhibit A (email from attorney Marc Mukasey, counsel for NHCA Group, describing corporate structure of NCHA Group); and Exhibit B (visual aid depicting NHCA Group relators and corporate organization ). NHCA Group formed Health Choice Alliance, LLC to serve as the relator in this action.

Acting through its numerous shell company relators, NHCA Group has filed eleven *qui tam* complaints against a total of thirty-eight different defendants for essentially the same alleged conduct. In addition to this action, the other complaints include:

- *U.S. ex rel. SAPF, LLC, v. Amgen, Inc.,* No. 16-cv-5203 (E.D. Pa.)
- *U.S. ex rel. SMSPF, LLC v. EMD Serono, Inc.,* No. 16-cv-5594 (E.D. Pa.)
- *U.S. ex rel. SMSF, LLC v. Biogen, Inc.,* No 1:16-cv-11379-IT (D. Mass.)
- *U.S. ex rel. NHCA-TEV, LLC v. Teva Pharma.,* No. 17-cv-2040 (E.D. Pa.)
- *U.S. ex rel. SCEF, LLC v. Astra Zeneca PLC,* No. 17-cv-1328 (W.D. Wash.)
- *U.S. ex rel. Miller, v. AbbVie, Inc.,* No. 3:16-cv-2111 (N.D. Tex.)
- *U.S. ex rel. Carle, v. Otsuka Holdings Co.,* No. 17-cv-966 (N.D. Ill.)
- *U.S. ex rel. CIMZNHCA v. UCB, Inc.,* No. 3:17-cv-00765 (S.D. Ill.)
- *U.S. ex rel. Health Choice Group, LLC v. Bayer Corp.,* No. 5:17-cv-126 (E.D. Tex.)

- *U.S. ex rel. Health Choice Advocates, LLC v. Gilead,* No. 5:17-cv-121 (E.D. Tex.)[2]

All of these cases present essentially the same theories of FCA liability – that pharmaceutical companies and commercial outsourcing vendors violated the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), by engaging in so-called "white coat marketing" and by providing free "nurse services" and "reimbursement support services."  *See generally* Second Amended Complaint (SAC), Dkt. 172, at ¶¶ 3-6.  First, the complaints allege that the defendants provided illegal remuneration in the form of "free nurse services," such as visiting patients at home to provide instruction on how to properly administer their newly-prescribed medications. *See id.* ¶¶ 95-170.  Second, according to NHCA Group, the defendants allegedly engaged in improper "white coat marketing" by hiring independent contractor nurses to act as "undercover sales representatives," who engage in impermissible promotional activity.  *See id.* ¶¶ 171-210. Third, the complaints allege that the pharmaceutical companies violated the AKS by helping physicians complete insurance documents, such as benefit verifications and prior authorization forms.  *See id.* ¶¶ 211-59.

In preparing its numerous complaints, NHCA Group appears to have utilized the same model or template, resulting in what are essentially cloned complaints.  When viewed side-by-side, it is apparent that certain allegations are repeated from one complaint to the next, including seemingly particularized allegations.  For example, the relator in this case alleges that Eli Lilly employees "emphasized" a specific marketing message regarding reimbursement support, *see*

---

[2]     Relators voluntarily dismissed the *Gilead* action on July 23, 2018.  The United States consented to the dismissal "based on its determination that under the circumstances such a dismissal is commensurate with the public interest and that the matter does not warrant the continued expenditure of government resources to pursue or monitor the action[.]"

SAC at ¶ 227; notably, the other complaints attribute the exact same message to the other defendants as well:

> **Biogen First Amended Compl. ¶ 202:**  "Biogen sales reps further emphasized that the cost and expenses normally associated with managing a patient's prescription would be shifted to Biogen, thereby increasing the Prescriber's bottom line."
>
> **Gilead First Amended Compl. ¶ 133:**  "Gilead sales reps further emphasized that the cost and expenses normally associated with managing a patient's prescription would be shifted to Gilead, thereby increasing the Prescriber's bottom line."
>
> **Bayer Second Amended Compl. ¶ 214:**  "Bayer sales reps further emphasized that the cost and expenses normally associated with managing a patient's prescription would be shifted to Bayer, thereby increasing the Prescriber's bottom line."

Similarly, the relator in this case specifically alleges that Eli Lilly personnel utilized this "value proposition" messaging to influence prescribing physicians.  *See* SAC at ¶ 228.  Yet again this same allegation is repeated nearly verbatim in the other *qui tam* actions:

> **Biogen First Amended Compl. ¶ 203:**  "This value proposition was a powerful tool in the hands of the Biogen drug representatives, and it was used to induce Prescribers to recommend Avonex, Plegridy and Tysabri."
>
> **Amgen Compl. ¶ 99:**  "This value proposition was a powerful tool in the hands of Amgen's drug reps and used to influence providers to recommend Amgen Covered Drugs."
>
> **UCB Compl. ¶ 74:**  "This value proposition was a powerful tool in the hands of UCB's drug representatives and used to influence providers to recommend UCB's Cimzia."
>
> **Gilead Compl. ¶ 134:**  "This value proposition was a powerful tool in the hands of Gilead's drug reps and Covance's field reps, and was used to induce Prescribers to recommend Gilead drugs."
>
> **Teva First Amended Compl. ¶ 124:**  "This value proposition was a powerful tool in the hands of Teva's sales representatives and was used to influence providers to recommend its drug Copaxone over its competitors."
>
> **Bayer Second Amended Compl. ¶ 215:**  "This value proposition was a powerful tool in the hands of the Bayer drug representatives, and it was used to induce Prescribers to recommend Betaseron, Nexavar, and Stivarga."

B. **The NHCA Group *Qui Tam* Business Model**

Shortly before the first of these actions was filed, the managing agent for NHCA Group, one of its investors, John Mininno, spoke to the media and explained NHCA Group's business model.  *See* J.C. Herz, *Medicare Scammers Steal $60 Billion a Year.  This Man is Hunting Them.*, Wired, March 7, 2016, available at https://www.wired.com/2016/03/john-mininno-medicare/ (last visited November 26, 2018).  Described as a "big-data entrepreneur," Mr. Mininno recalled that when the Centers for Medicare and Medicaid Services (CMS) made available to the public vast amounts of Medicare claims data, he viewed it as "a massive business opportunity," specifically with regard to *qui tam* suits.  *Id.*  Backed by a "Wall Street angel investor," NHCA Group was established.  *Id.*

In order to obtain information for its *qui tam* business, NHCA Group created a database of resumes, "scraped and extracted from publicly-available sources," which the organization uses to identify "potential informants."  *Id.*  NHCA Group then contacts these individuals under the guise of conducting a "research study" of the pharmaceutical industry.  More specifically, NHCA Group offers to pay these individuals to participate in what it calls a "qualitative research study;" however, the information is actually being collected for use in *qui tam* complaints filed by the NHCA Group through its pseudonymous limited liability companies.[3]

On its website, NHCA Group makes no mention of its role behind dozens of *qui tam* actions, instead holding itself out to the public as a "healthcare research company that engages in

---

[3]      All eleven of NHCA Group's *qui tam* actions referenced herein was brought by a corporate relator; however, at least 4 of the cases also included an individual co-relator alongside the LLC relator when originally filed.  NHCA Group has attempted to add individual co-relators to a number of the other cases at the time of subsequent amendments, albeit with limited success. *See, e.g., United States ex rel. Health Choice Group, LLC. v. Bayer Corp.*, No. 5:17-cv-126 (E.D. Tex. July 31, 2018) (dismissing individual co-relator added to amended complaint because her claims "are barred by the False Claims Act's first-to-file rule.")

qualitative research of pharmaceutical and other healthcare-related industries."  National

Healthcare Analysis Group, http://www.nhcagroup.com (last visited November 26, 2018).

Although it collects information to use in *qui tam* actions against pharmaceutical companies,

NHCA Group states prominently on its website that it has "no particular bias one way or the

other about the industry."  *Id.*

The transcripts of NHCA Group witness interviews reveals the false pretenses that

NHCA Group uses to obtain information from witnesses.  *See* McCabe Decl., ¶ 5, Exhibits C-1 –

C-3.  For instance, when explaining the purpose of the interview, NHCA Group representatives

repeatedly tell the witnesses that the organization is conducting a "research study," and

underscore that "they have no bias one way or the other" regarding the pharmaceutical industry.

*Id*.  The witnesses are not told that the interviewer is acting at the direction of attorneys to collect

information that will be used in lawsuits involving the witnesses' current or former employers,

nor are they told that they will be named as corroborating "witnesses" in those lawsuits.  *See id.*[4]

By utilizing cloned complaints and information gleaned from its fictitious "research

study," NHCA Group advances sweeping allegations of nationwide misconduct by thirty-eight

different defendants – allegations that, for Medicare Part D alone, implicate more than 73 million

prescriptions written by hundreds of thousands of different physicians for millions of different

Medicare beneficiaries.  Due to the expansive scope of the allegations, the Department of Justice

has expended substantial resources investigating the NHCA Group matters.

---

[4]       In *United States ex rel. Leysock v. Forest Labs., et al.*, No. 1:12-cv-11354-FDS, 2017 WL
1591833 (D. Mass. April 28, 2017), relator's counsel interviewed witnesses as part of a fictitious
"research study" that the court found to be part of "an elaborate scheme of deceptive conduct"
designed to obtain specific details to satisfy *qui tam* pleading requirements.  *Id*. at *1  The court
concluded that such conduct violated several Massachusetts rules of professional conduct and, as
a sanction, struck from the complaint all particularized details obtained through the fictitious
"research study," and dismissed the complaint.  *Id.* at *9-10.

After concluding that relator's allegations in this case lacked sufficient factual and legal support, as in the other actions, the United States notified the Court on October 30, 2017 that it was declining to intervene.  Dkt. 8.  The case was thereafter unsealed, and relator filed an Amended Complaint on January 12, 2018, which was dismissed without prejudice on August 10, 2018.  Dkt. 98.  Relator filed a Second Amended Complaint (SAC) on September 14, 2018.  Dkt. 102.  The United States now respectfully requests that this action be dismissed pursuant to 31 U.S.C. § 3730(c)(2)(A), for the reasons discussed below.

## II.    ARGUMENT

### A.  The FCA Statutory Framework

The FCA enables the United States to recover monies lost due to the submission of false claims.  31 U.S.C. § 3729.  Among the unique features of the FCA is that it allows private parties, known as relators, to bring an action on behalf of the United States through the filing of a *qui tam* action.  The *qui tam* provisions of the FCA provide a special means for the United States to recover damages suffered as a result of fraud or false claims, through the assistance of relators, who file suit "for the person and for the United States Government."  *Id.* § 3730(b).  Although a *qui tam* suit is brought in the name of the United States, a relator has a right to a share of the recovery, plus attorneys' fees and costs.  *Id.* § 3730(b), (d).

Among other things, the FCA directs that the relator must file his or her complaint under seal and serve it, along with a written disclosure of evidence, on the United States.  *Id.* §§ 3730(b)(1) and (2).  The United States has 60 days (and any extensions granted by the district court) to investigate the allegations and elect whether or not to intervene in the litigation.  *Id.* §§ 3730(b)(2) and (3).  If the United States intervenes in the case, "the action shall be conducted by the Government," and the Government assumes "the primary responsibility for prosecuting

7

the action" and is not bound by an act of the relator. *Id.* §§ 3730(b)(4)(A) and (c)(1).  The relator

remains a party to the suit, but the Government may settle the case over his objection (*Id.*

§ 3730(c)(2)(B), or may seek to limit his participation in the litigation.  *Id.* § 3730(c)(2)(C).

If the United States declines to intervene in the case, the relator has the right to proceed

with the action.  *Id.* § 3730(c)(3).  However, that right is *not* absolute; rather, it is circumscribed

by a number of limitations designed to ensure that the United States retains control over the

declined action.  For example, the relator cannot dismiss the action without the written consent

of the Attorney General.  *Id.* § 3730(b)(1).  The court may stay discovery in the *qui tam* action if

it would interfere with the Government's investigation or prosecution of another matter.  *Id.*

§ 3730(c)(4).  Moreover, even when the Attorney General initially declines to intervene in the

suit, the district court "may nevertheless permit the Government to intervene at a later date upon

a showing of good cause."  *Id.* § 3730(c)(3).

Most importantly for purposes of this motion, the FCA authorizes the Attorney General to

dismiss a *qui tam* action over a relator's objection:

> The Government may dismiss the action notwithstanding the
> objections of the person initiating the action if the person has been
> notified by the Government of the filing of the motion and the court
> has provided the person with an opportunity for a hearing on the
> motion.

*Id.* § 3730(c)(2)(A). The United States is authorized to dismiss even where it has opted not to

intervene. *See United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993),

*cert. denied*, 510 U.S. 1140 (1994), *citing Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp.

348 (D.D.C. 1990), *aff'd*, 959 F.2d 1101 (D.C. Cir. 1992) (table).

B.      **Standard of Review**

The Government possesses broad authority to dismiss *qui tam* actions under Section 3730(c)(2)(A).  Two different standards have been adopted by appellate courts to guide the application of the government's dismissal authority.  In *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003), the Court of Appeals for the District of Columbia interpreted the FCA to grant the Government "an unfettered right to dismiss" a *qui tam* action.  The Ninth Circuit has applied a "rational relationship test" for dismissal but has also recognized that the United States has broad prosecutorial discretion to dismiss even meritorious *qui tam* cases where the reasons for dismissal are rationally related to a legitimate Government interest.  *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998).  Building on *Sequoia Orange*, the Tenth Circuit has concluded that "it is enough that there are plausible, or arguable, reasons supporting the agency decision [to move for dismissal]." *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 937 (10th Cir. 2005) (citing the district court decision in *Sequoia Orange*, 912 F. Supp. 1325, 1341 (E.D. Cal. 1995)).

The Fifth Circuit has yet to adopt a standard for dismissal under Section 3730(c)(2)(A), although it has indicated that the United States retains unilateral authority to seek dismissal in a declined *qui tam* action.  *See Riley v. St. Luke's Episcopal Hosp.,* 252 F.3d 749 (5th Cir. 2001) ("[T]he government retains the unilateral power to dismiss an action notwithstanding the objections of the [relator]." (citations and internal quotation marks omitted)); *see also United States ex rel. Gal-Or v. Northrup Gruman,* No. 4:17-cv-00139-O (N.D. Tex. Oct. 26, 2017) (following *Swift* and explaining that "[n]othing in the language of 3730(c)(2)(A) suggests anything less than affording the Executive the historical prerogative to decide which cases are prosecuted in the name of the United States."); *United States ex rel. May v. City of Dallas*, No.

9

3:13-cv-4194, 2014 WL 5454819, at *3 (N.D. Tex. Oct. 27, 2014) ("The *Swift* court makes a compelling case that the United States should not be compelled to permit a relator to sue on its behalf and that the statutory language does not require—or even permit—judicial review of this discretionary decision."). The government agrees that the more recent *Swift* standard better comports with the FCA's statutory text and framework, as well as the well-established deference to the government's exercise of prosecutorial discretion. Under either standard, however, dismissal is warranted for the reasons discussed below.

### C.      Dismissal is Warranted Under the *Swift* Standard of Unfettered Discretion

Consistent with *Swift*, this Court should find that the United States has an unfettered right to dismiss a *qui tam* suit and defer to the United States' decision to dismiss this action.

As the *Swift* court explained, the FCA operates against the backdrop of the general principle of separation of powers, in which the Executive Branch exercises control over whether to pursue litigation for the United States. *Swift,* 318 F.3d at 251-52. The court concluded that full deference to the Executive Branch is particularly appropriate, observing that "we cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive´s judgment in this regard," given that "'[t]he Government'—meaning the Executive Branch, not the Judicial—'may dismiss the action,' which at least suggests the absence of judicial constraint." 318 F.3d at 252. The *Swift* court further held that the Government's decision not to prosecute a case that is brought in its name is "unreviewable," including decisions to dismiss under section 3730(c)(2)(A). *Id.*

As the D.C. Circuit concluded in *Swift*, imposing judicial review on the Executive's litigation determinations is inconsistent with the general principle of separation of powers: "decisions not the prosecute, which is what the government's judgment in this case amounts to,

are unreviewable." *Id.*   Thus, the appellate court concluded, under § 3730(c)(2)(A), the Attorney General has an "unfettered right to dismiss an action" *Id.*; *see also id.* at 253 ("The decision whether to bring an action on behalf of the United States is therefore 'a decision generally committed to [the Government's] absolute discretion' for the reasons spelled out in *Heckler v. Chaney,* 470 U.S. at 831").

The *Swift* court also rejected the notion that a relator's right to a hearing, as provided in section 3730(c)(2)(A), was intended to confer authority on the court to review the Government's reasons for dismissal.  *Id.* at 253.  It explained that nothing in the FCA "purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States."  *Id.*  Instead, the *Swift* court concluded that the function of a hearing, if requested by relator, "is simply to give the relator a formal opportunity to convince the government not to end the case."  *Id.*

 The *Swift* standard is also more consistent with the plain language of section 3730(c)(2)(A), which differs markedly from the provision in the statute authorizing the Attorney General to settle a *qui tam* case over a relator's objection: "The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, *that the proposed settlement is fair, adequate, and reasonable under all the circumstances*."  31 U.S.C. § 3730(c)(2)(B) (emphasis added).  Significantly, section 3730(c)(2)(A) imposes no similar limitation on the Attorney General's authority to dismiss a *qui tam* case.

The Attorney General's broad dismissal authority in the statute also sharply contrasts with the ability of a relator to dismiss a *qui tam* case.  The FCA specifically states that the relator has no such power unless "the court and the Attorney General give written consent to the

dismissal and their reasons for consenting." *Id.* at § 3730(b)(1).  Once again, no such restrictions appear in section 3730(c)(2)(A).

It is not surprising that Congress gave unfettered discretion to the Attorney General to determine whether a *qui tam* case should be prosecuted.  A *qui tam* relator has been authorized by Congress to sue solely to seek recovery of injuries suffered by the United States, not by the relator.  As the Supreme Court made clear in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), a relator has Article III standing because she can be regarded as having received a "partial assignment from Congress of the Government's damages." *Id*. at 773, 772-774.  Specifically, a relator has standing "to assert the injury in fact suffered by the assignor [United States]." *Id*.  Thus, a relator herself has suffered no cognizable injury warranting the continuation of a suit opposed by the United States.  *See id*. at 773.

### D.    Dismissal is Warranted Under *Sequoia Orange's* Rational Relationship Test

While the United States submits that *Swift's* unfettered discretion reflects the appropriate construction of 3730(c)(2)(A), the court need not resolve that issue, because dismissal is also warranted under the rational relationship test articulated in *Sequoia Orange*.  Under this standard, the United States need only (1) identify a "valid government purpose" for dismissing the case, and (2) show a "rational relationship between dismissal and accomplishment of the purpose." *Id*. (quotations omitted).  If the United States satisfies this two-step test, "the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id*.

In developing this test, the Ninth Circuit observed that "the decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws," and the dismissal provision in the FCA should not be construed to grant the Judiciary an

impermissible power to approve or disapprove the Executive's exercise of prosecutorial

discretion. *Id*. at 1143.  Consequently, the Ninth Circuit reasoned that when a court considers a

motion by the government to dismiss a *qui tam* case, it should "respect[] the Executive Branch's

prosecutorial authority by requiring no greater justification of the dismissal motion than is

mandated by the Constitution itself." *Id.* at 1146.  As a result, even where the *Sequoia* standard

is applied, courts are careful not to create barriers to the Government's exercise of prosecutorial

discretion.

As the District of Massachusetts has noted, "the Government's quest to dismiss an action

under the *Sequoia* standard" should not be "particularly arduous." *United States ex rel. Nasuti v.*

*Savage Farms, Inc.*, No. 12-30121, 2014 WL 1327015, at \*10 (D. Mass. Mar. 27, 2014).  In

*Nasuti*, the court held:

> [D]espite not intervening in the action, the Government clearly has standing and is
> entitled to seek dismissal under 3730(c)(2)(A).   As discussed, even if the
> Government does not intervene in a FCA *qui tam* action, it retains significant
> control over the litigation and is still considered the 'real party in interest.'

*Id.* at \*9.  The court further explained:

> [L]imiting the Government's role in any significant way in *qui tam* actions,
> including its ability to accomplish dismissal under section 3730(c)(2)(A), could
> bring the constitutionality of the FCA into question.  After all, a *qui tam* action is
> brought in the Government's name and, as the real party in interest, it should have
> broad discretion to determine its fate.

*Id.* at \*10.  The court went on to hold that dismissal was appropriate under either standard

because the Government articulated a concern that "were this case to continue, it would incur

substantial costs in monitoring the litigation . . . , responding to discovery requests, and

clarifying relator's misstatements of the law." *Id.* at \*11.  The court acknowledged that

"litigation costs represent a valid government interest" and the Government may therefore

rationally seek dismissal of an action even where the allegations may have merit. *Id.  See also*

*Sequoia Orange*, 151 F.3d at 1146 (approving of district court's consideration of "the burden imposed on the taxpayers by its litigation" and "internal staff costs" the government would occur with relator's litigation); *Swift*, 318 F.3d at 254 ("[T]he government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective."); *United States ex rel. Stovall v. Webster Univ.*, Civil Action No. 3:15-cv-03530 2018 WL 3756888 *3 (D.S.C., Aug. 8, 2018) (granting the government's motion to dismiss because "dismissal will further its interest in preserving scarce resources by avoiding the time and expense necessary to monitor this action."); *see United States ex rel. Levine v. Avnet, Inc.*, No. 2:14-cv-17, 2015 WL 1499519, at *5 (E.D. Ky. Apr. 1, 2015) (same); *United States ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (same).

In this case dismissal is appropriate because it is rationally related to the valid governmental purposes of preserving scarce government resources and protecting important policy prerogatives of the federal government's healthcare programs.  As an initial matter, based on its extensive investigation of all of the various Venari Partner complaints, the government has concluded that the relators' allegations lack sufficient factual and legal support.  The government's investigations included, among other things, the collection and review of tens of thousands documents from the defendants and third parties and interviews of numerous witnesses, including prescribing physicians.  The government also has had extensive discussions with relators' counsel and has reviewed various information that they have provided.  In addition, the government has consulted with subject-matter experts at HHS-OIG about the

relators' allegations and the applicability of regulatory safe harbors and government-issued industry guidance.[5]

As a result, the government has concluded that further expenditure of government resources is not justified.  Because relator alleges nationwide misconduct involving Medicare, Medicaid, and TRICARE over at least a six-year period, the government will incur substantial costs in monitoring the litigation and responding to discovery requests.  For Medicare Part D alone in this period, there were more than 32 million prescriptions for the Eli Lilly drugs at issue, prescribed by more than 400,000 different physicians treating well over a million different Medicare beneficiaries.  The vast scope of the allegations will necessarily yield substantial litigation burdens for the United States.  These burdens include the expense of collecting, reviewing, processing, and producing documents from among multiple federal healthcare programs, as well as voluminous prescription drug event data and patient health information for potentially thousands of beneficiaries, which, due to its sensitive nature, may require additional (and costly) screening and redaction.  Moreover, the government will also have to spend considerable time preparing numerous agency witnesses for depositions and filing statements of interest relating to a variety of legal issues, including the potential need to address Relator's interpretation of the AKS, statutory exceptions, regulatory safe harbors, and HHS-OIG Advisory Opinions.[6]  The government has rationally concluded based on its extensive investigation of

---

[5]   To date, Department attorneys in the Civil Division's Fraud Section have collectively spent more than 1,500 hours on the eleven NHCA Group matters referenced herein.  This figure does *not* include the substantial time spent by numerous Assistant U.S. Attorneys and attorneys from the Department of Health and Human Services Office of Counsel to the Inspector General, nor does it include the time spent by law enforcement agents, investigators, or auditors.

[6]   The expansive scope of the allegations in this case will also impose substantial burdens on the court, the defendants, and potentially thousands of third-party healthcare providers who are not named as defendants but may get dragged into the case by one or both parties.

relators' various cases that the relators' sweeping allegations lack adequate support and are unlikely to yield any recovery sufficient to justify the significant costs and burdens that the government will incur if the cases proceed and the resulting diversion of the government's limited resources away from other more meritorious matters.

In addition, the government has concluded that the specific allegations in this case conflict with important policy and enforcement prerogatives of the federal government's healthcare programs.  For instance, relators allege that the provision of educational information and instruction to patients constitutes illegal kickbacks to physicians.  But given the vast sums the government spends on the medications at issue, federal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication, such as access to a toll-free patient-assistance line or instructions on how to properly inject or store their medication.  In another context, HHS-OIG has advised that the provision of educational materials or informational programs to patients, without more, does not constitute "remuneration" *See* 81 Fed. Reg. 88368-01 at 88396 (Dec. 7, 2016).  These relators should not be permitted to indiscriminately advance claims on behalf of the government against an entire industry that would undermine common industry practices the federal government has determined are, in this particular case, appropriate and beneficial to federal healthcare programs and their beneficiaries.

### III.    CONCLUSION

For the reasons set forth above, this Court should dismiss all claims brought on behalf of the United States by Health Choice Alliance, LLC under the FCA with prejudice as to Relator and without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General,
Civil Division

JOSEPH D. BROWN
United States Attorney


Dated:  December 17, 2018          By: /s/ *James G. Gillingham*
                                   JAMES G. GILLINGHAM
                                   Assistant U.S. Attorney
                                   Eastern District of Texas
                                   110 N. College Street; Suite 700
                                   Tyler, Texas 75702
                                   E-mail: James.Gillingham@usdoj.gov
                                   (903) 590-1400
                                   (903) 590-1436 (fax)
                                   Texas State Bar # 24065295

                                   MICHAEL D. GRANSTON
                                   EDWARD C. CROOKE
                                   BRIAN J. McCABE
                                   Attorneys, Civil Division
                                   United States Department of Justice
                                   P.O. Box 261, Ben Franklin Station
                                   Washington, D.C. 20044
                                   202-616-4875
                                   202-616-3085 (fax)
                                   Brian.McCabe@usdoj.gov

**CERTIFICATE OF SERVICE**

       I certify that on this 17th day of December 2018, I caused this document filed through the ECF system to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.


         /s/ *James G. Gillingham*
        JAMES G. GILLINGHAM

# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* Health Choice Alliance, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.: 5:17-cv-00123 |
| v. | § | |
| | § | **FILED UNDER SEAL** |
| | § | **(Pursuant to 31 U.S.C. § 3730(b))** |
| ELI LILLY AND COMPANY, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**UNITED STATES' NOTICE OF**
**ELECTION TO DECLINE INTERVENTION**

Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B), the United States notifies the

Court of its decision not to intervene in this action.  The  Relator's  current  complaint  includes

claims on behalf of various states under their respective state false claims acts.  Counsel for the

United States does not represent the state governments in this matter.  However, counsel for the

states have informed the undersigned that they are declining intervention in this action as well.

Although the United States declines to intervene, we respectfully refer the Court to 31

U.S.C. § 3730(b)(1), which allows the Relator to maintain the action in the name of the United

States; provided, however, that the "action may be dismissed only if the court and the Attorney

General give written consent to the dismissal and their reasons for consenting." *Id.*  Therefore, the

United States requests that, should either the Relator or the Defendants propose that this action be

dismissed, settled, or otherwise discontinued, this Court solicit the written consent of the United

States before ruling or granting its approval.

Furthermore, pursuant to 31 U.S.C. § 3730(c)(3), the United States requests that all pleadings filed in this action be served upon the United States; the United States also requests that orders issued by the Court be sent to the Government's counsel. The United States reserves its right to order any deposition transcripts, to intervene in this action, for good cause, at a later date, and to seek the dismissal of the Relator's action or claim. The United States also requests that it be served with all notices of appeal.

Finally, the Government requests that the Relator's current complaint, this Notice, and the attached proposed Order be unsealed. The United States requests that all other papers on file in this action remain under seal because, in discussing the content and extent of the United States' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

A proposed order accompanies this notice.

Respectfully submitted,

BRIT FEATHERSTON
Acting United States Attorney


*/s/ Joshua M. Russ*
JOSHUA M. RUSS
Assistant U.S. Attorney
Eastern District of Texas
101 East Park Blvd., Suite 500
Plano, Texas 75074
E-mail: Josh.M.Russ@usdoj.gov
(972) 509-1201
(972) 509-1209 (fax)
Texas State Bar # 24074990

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
(903) 590-1400
(903) 590-1436 (fax)
Texas State Bar # 24065295

MICHAEL D. GRANSTON
EDWARD CROOKE
BRIAN MCCABE
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-4875
E-mail: brian.mccabe@usdoj.gov

**ATTORNEYS FOR THE
 UNITED STATES OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify on this 30th day of October 2017, I caused copies of the foregoing notice, and proposed order, to be served by email on:

Samuel F. Baxter
sbaxter@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas  75760

W. Mark Lanier
WML@LanierLawFirm.com
THE LANIER FIRM
6810 FM 1960 West
Houston, Texas  77069

Eric B. Halper
ehalpher@mckoolsmith.com
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036

Because this action is under seal pursuant to 31 U.S.C. §§ 3729-3733, Defendants have not been served with copies of the foregoing filing.

 /s/ Joshua M. Russ
JOSHUA M. RUSS

# Exhibit C

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2731-20
A-2733-20

THE STATE OF NEW JERSEY
ex rel. HEALTH CHOICE
GROUP, LLC,

      Plaintiff-Appellant,

v.

BAYER CORPORATION and
BAYER HEALTHCARE
PHARMACEUTICALS, INC.,

      Defendants-Respondents.

_____

THE STATE OF NEW JERSEY
ex rel. HEALTH CHOICE
ALLIANCE, LLC,

      Plaintiff-Appellant,

v.

ELI LILLY AND COMPANY,
INC.,

      Defendant-Respondent.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 1, 2024** |
| **APPELLATE DIVISION** |

Argued November 14, 2023 – Decided March 1, 2024

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-3311-20 and L-3312-20.

Radu A. Lelutiu (McKool Smith PC) of the New York bar, admitted pro hac vice, and Ruby Khallouf argued the cause for appellant Health Choice Group, LLC, in A-2731-20 and appellant Health Choice Alliance, LLC, in A-2733-20 (Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, Radu A. Lelutiu, W. Mark Lanier (The Lanier Law Firm) of the Texas bar, admitted pro hac vice, Zeke DeRose III (The Lanier Law Firm) of the Texas bar, admitted pro hac vice, and Eric B. Halper (McKool Smith PC) of the New York bar, admitted pro hac vice, attorneys; Brian Russell Tipton, Ruby Khallouf, W. Mark Lanier, Zeke DeRose III, Eric B. Halper, and Radu A. Lelutiu, of counsel and on the briefs).

Lawrence S. Lustberg argued the cause for respondents Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc., in A-2731-20 (Gibbons PC, Matthew J. O'Connor (Covington & Burling LLP) of the District of Columbia and Massachusetts bars, admitted pro hac vice, Matthew F. Dunn (Covington & Burling LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, and Kristin M. Cobb (Covington & Burling LLP) of the District of Columbia and Virginia bars, admitted pro hac vice, attorneys; Lawrence S. Lustberg, Matthew J. O'Connor, Matthew F. Dunn, and Kristin M. Cobb, of counsel and on the brief).

Allon Kedem (Arnold & Porter Kaye Scholer LLP) of the District of Columbia and New York bars, admitted

pro hac vice, argued the cause for respondent Eli Lilly and Company, Inc., in A-2733-20 (Faegre Drinker Biddle & Reath LLP, Michael A. Rogoff (Arnold & Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, Sara L. Shudofsky (Arnold & Porter Kaye Scholer LLP) of the New York bar, admitted pro hac vice, and Debra E. Schreck, attorneys; Jeffrey S. Jacobson, Michael Charles Zogby, Michael A. Rogoff, Sara L. Shudofsky, and Debra E. Schreck, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

These two appeals, which we consolidate for purposes of this opinion, arise out of separate, but similar, qui tam lawsuits filed by plaintiffs Health Choice Group, LLC (HCG) and Health Choice Alliance, LLC (HCA) (collectively, plaintiffs or Relators) on behalf of the State of New Jersey. HCG sued defendants Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. (collectively, Bayer), and HCA sued Eli Lilly and Company, Inc. (Lilly). Plaintiffs alleged that Bayer and Lilly (collectively, defendants) had violated the New Jersey False Claims Act (NJFC Act), N.J.S.A. 2A:32C-1 to -15, -17 to -18, by engaging in unlawful marketing schemes that caused false claims to be submitted to and paid by government-funded healthcare programs.

Defendants moved to dismiss plaintiffs' complaints on several grounds, including under Rule 4:6-2(e) and Rule 4:5-8(a). The trial court granted those

3                                                          A-2731-20

motions, holding that plaintiffs' claims were barred by the public disclosure and first-to-file provisions in the NJFC Act. The trial court also ruled that plaintiffs had failed to plead fraud with the particularity required by Rule 4:5-8(a). Plaintiffs appeal from the orders dismissing their complaints with prejudice. Because the allegations in plaintiffs' complaints had previously been publicly disclosed and because plaintiffs were not the original source of that information, we hold that plaintiffs' complaints were properly dismissed under the public disclosure bar of the NJFC Act. See N.J.S.A. 2A:32C-9(c). Accordingly, we affirm on that basis and do not address the alternative grounds for the dismissals.

I.

Plaintiffs are subsidiaries of the National Health Care Analysis Group (the NHCA Group), a partnership of limited liability companies established by investors and former bankers "for the purpose of filing qui tam actions alleging instances of fraud in medicine and pharmaceuticals." United States ex rel. Health Choice All., L.L.C. v. Eli Lilly & Co., 4 F.4th 255, 259 (5th Cir. 2021) (italicization omitted). The federal False Claims Act (FCA), 31 U.S.C. §§ 3729-33, and similar state statutes, including the NJFC Act, permit private persons, called "relators," to bring qui tam suits on behalf of the government and, if the

4                                                                                              A-2731-20

relators prove that false claims were paid by the government, receive a portion of any recovery. 31 U.S.C. § 3730(b), (d)(2); N.J.S.A. 2A:32C-5(b), -7(d).

In June 2017, plaintiffs filed separate, sealed qui tam actions against Bayer and Lilly in the United States District Court for the Eastern District of Texas (the Federal Actions). Both actions were filed on behalf of the United States and thirty-one states, including New Jersey, and alleged that defendants had violated the FCA and similar state false claims statutes, including the NJFC Act. At approximately the same time, affiliates of plaintiffs filed numerous other qui tam actions against other pharmaceutical companies based on similar allegations.[1]

In the Federal Actions, plaintiffs alleged that Bayer and Lilly had used unlawful marketing schemes to induce healthcare providers to prescribe their drugs, thereby causing billions of dollars of false claims to be submitted to and paid by government-administered programs, primarily Medicaid and Medicare. Plaintiffs represented in their complaints that agents of the NHCA Group had conducted multi-part investigations, which included interviewing various

---

[1] Another subsidiary of the NHCA Group sued Gilead Sciences, Inc. first in the federal Eastern District of Texas and later in New Jersey. In a separate unpublished opinion, we have affirmed the dismissal of the claims against Gilead. See State ex rel. Health Choice Advocs., LLC v. Gilead Scis., Inc., No. A-2736-20 (App. Div. 2024).

individuals who were familiar with defendants' practices and examining Medicare and Medicaid data for defendants' products. Through those investigations, plaintiffs contend they discovered that Bayer and Lilly were engaging in three marketing schemes that violated the FCA and the NJFC Act.

The first two schemes involved providing free nurse services (the "Free Nurse Scheme") and reimbursement support services (the "Support Services Scheme") to healthcare providers who wrote prescriptions for Bayer's and Lilly's drugs. Bayer and Lilly allegedly allowed prescribers who prescribed their drugs to use free "nurse educators" to provide follow-up care and monitoring for patients, thereby relieving the prescribers of the responsibility to provide those services. Bayer and Lilly also allegedly provided free support services to assist providers who prescribed patients their drugs. These services assisted providers with determining and obtaining insurance coverage for patients for the cost of the drugs and obtaining prior authorization. Plaintiffs asserted that those free services induced providers to prescribe Bayer's and Lilly's drugs over competitors' drugs and caused false claims to be submitted to and paid for by government programs.

In the third scheme, Bayer and Lilly allegedly used registered nurses to promote their drugs (the "White Coat Marketing Scheme"). The registered

nurses, who were independent contractors, used their professional credentials to gain access to providers. Bayer and Lilly allegedly paid those nurses to recommend their drugs, and plaintiffs alleged that those payments were illegal kickbacks.

In October 2017, the United States and all named states, including New Jersey, declined to intervene in the Federal Actions, and the complaints were then unsealed and served on Bayer and Lilly. Shortly thereafter, Bayer and Lilly moved to dismiss the claims in the Federal Actions. Plaintiffs then filed an amended complaint, and defendants again moved to dismiss.

Before the federal court ruled on defendants' motions, the United States moved to dismiss the Federal Actions. The United States offered two reasons to support its request for dismissal: (1) "the allegations . . . lack[ed] sufficient merit to justify the cost of investigation and prosecution[;]" and (2) "further litigation . . . [would] undermine practices that benefit federal healthcare programs by providing patients with greater access to product education and support." Eli Lilly, 4 F.4th at 267. The United States also asserted that the drug education services provided by Bayer and Lilly "benefit[ed] federal healthcare programs" and were lawful. Id. at 268. New Jersey took no position on the United States' motion to dismiss the Federal Actions.

A-2731-20

In September 2019, the court overseeing the Federal Actions dismissed with prejudice plaintiffs' FCA claims but dismissed without prejudice plaintiffs' state law claims, including the claims based on the NJFC Act. Shortly thereafter, plaintiffs appealed the dismissal of their FCA claims. They did not challenge the dismissal without prejudice of their state law claims.

In July 2021, the United States Court of Appeals for the Fifth Circuit affirmed the dismissal of the FCA claims against Bayer and Lilly in the Federal Actions. Id. at 269. The Fifth Circuit held that the United States' dismissal of the action was proper, id. at 267, and plaintiffs did not show the government had acted arbitrarily, capriciously, or illegally in seeking the dismissal, id. at 269.

In October 2019, while the Federal Actions were on appeal, plaintiffs filed these two qui tam actions under seal on behalf of the State of New Jersey. When New Jersey declined to intervene, both complaints were unsealed in April 2020.

The complaints filed in New Jersey alleged the same marketing schemes identified in the Federal Actions and contended that those schemes resulted in false claims being submitted to and paid by New Jersey in violation of the NJFC Act. In that regard, plaintiffs' complaints against Bayer and Lilly filed in New Jersey were based on the Free Nurse Scheme, the Support Services Scheme, and the White Coat Marketing Scheme.

A-2731-20

Bayer and Lilly moved to dismiss plaintiffs' complaints under Rule 4:46-2 on three grounds. They argued that the claims filed in New Jersey were (1) barred by the public disclosure provision in the NJFC Act, N.J.S.A. 2A:32C-9(c); (2) barred by the first-to-file provision, N.J.S.A. 2A:32C-5(i); and (3) inadequate because they did not plead fraud with the particularity required by Rule 4:5-8(a). The trial court heard arguments on both motions to dismiss.

On April 22, 2021, the trial court issued two orders and a consolidated opinion granting Bayer's and Lilly's motions to dismiss with prejudice. The trial court based its rulings on three grounds. First, the court found that the allegations in plaintiffs' complaints filed in New Jersey were based on transactions previously publicly disclosed in the Federal Actions, as well as in newspaper articles. The court then determined that plaintiffs did not qualify as the original source of the information as required by the NJFC Act. See N.J.S.A. 2A:32C-9(c).

Second, the trial court held that plaintiffs' complaints should be dismissed under the NJFC Act's first-to-file bar. That bar prohibits a plaintiff from bringing a related action based on facts underlying a pending NJFC Act action. N.J.S.A. 2A:32C-5(i). The trial court found that the allegations in the complaints filed in New Jersey were like the allegations in the then-pending

Federal Actions. In that regard, the trial court issued its rulings several months before the Fifth Circuit affirmed the dismissal of the federal FCA claims in the Federal Actions.

Finally, the trial court found that both complaints failed to plead fraud with the specificity required by Rule 4:5-8(a). In particular, the trial court noted that plaintiffs' complaints failed to allege specific facts showing that the schemes increased prescriptions of Bayer and Lilly products or that any prescriptions were issued for reasons other than valid medical reasons.

Plaintiffs filed separate appeals from the orders dismissing their New Jersey complaints with prejudice.

II.

In both appeals, plaintiffs make the same three arguments. They contend that the trial court erred in holding that (1) the public disclosure bar applied; (2) the first-to-file bar applied; and (3) the complaints failed to plead fraud with particularity. Regarding their arguments about pleading fraud with particularity, plaintiffs contend that the court compounded its error by dismissing the complaints with prejudice because they should have been allowed to amend their complaints.

10

Appellate courts review orders granting motions to dismiss for failure to state a claim under a de novo standard. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In doing so, we "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). "The complaint must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

We hold that the complaints were properly dismissed with prejudice under the NJFC Act's public disclosure bar. In that regard, we point out that the public disclosure bar involves a question of standing. Relators lack standing to bring claims under the NJFC Act when the claims are based on allegations or transactions that have already been publicly disclosed and the relators were not the original source of the information. See Brennan v. Lonegan, 454 N.J. Super. 613, 620 (App. Div. 2018).

11

Standing "involves a threshold determination of the court's power to hear the case." Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 418 (1991). Although our courts "have historically taken a much more liberal approach on the issue of standing than have the federal cases," Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101 (1971), the public disclosure bar in the NJFC Act uses the word "shall," which denotes that it is a mandatory bar when applicable. See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) (explaining that a statute's use of "shall" generally means that the statutory provision is mandatory).

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018); accord Brennan, 454 N.J. Super. at 618. An appellate court therefore owes no "special deference" to the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A.    The NJFC Act.

The NJFC Act imposes civil penalties on any person who "[k]nowingly presents . . . a false or fraudulent claim for payment or approval." N.J.S.A.

12                                                    A-2731-20

2A:32C-3(a). The NJFC Act is modeled on the FCA and is intended to protect the government, and ultimately taxpayers, from paying false claims. See State ex rel. Hayling v. Corr. Med. Servs., Inc., 422 N.J. Super. 363, 372 (App. Div. 2011) (quoting Assemblyman Herb Conaway, Jr., who described the NJFC Act to the Assembly Judicial Committee "as New Jersey's [whistleblower] statute which tracks the federal law that allows private individuals . . . to sue on behalf of the government to recover the losses to the public"). A "claim" is defined to include a request or demand for money, property, or services that is "made to any employee, officer, or agent of the State" if the State provides any portion of the money, property, or services requested. N.J.S.A. 2A:32C-2.

The NJFC Act precludes actions by private persons based on allegations or transactions that have previously been publicly disclosed, unless "the person bringing the action is an original source of the information." N.J.S.A. 2A:32C-9(c). In construing the FCA, the United States Supreme Court has held that the "original source" language was "an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010). Because our Legislature has adopted "essentially the same 'original source' language" for the NJFC Act, we have previously

concluded "our Legislature likewise intended to avoid 'parasitic lawsuits' based on publicly disclosed information." Brennan, 454 N.J. Super. at 620.

B.    The 2023 Amendment to the NJFC Act.

In 2023, the New Jersey Legislature amended several sections of the NJFC Act, including the definition of "original source." L. 2023, c. 73. So, the initial question we must decide is which definition applies to plaintiffs' actions, which were brought in 2019, dismissed by the trial court in 2021, and are currently on appeal. That question, in turn, depends on whether the 2023 amendments apply retroactively.

When the Legislature first adopted the NJFC Act in 2008, it used substantially the same "original source" definition that was used in the FCA. Brennan, 454 N.J. Super. at 620. Thus, "original source" was defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information." N.J.S.A. 2A:32C-9(c) (2008).

In 2010, Congress amended the FCA and defined "original source" to mean:

> [A]n individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily

disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

[31 U.S.C. § 3730(e)(4)(B).]

As noted, in 2023, our Legislature amended the definition of "original source" to track the federal definition. Consequently, original source is now defined to mean:

[A]n individual who either (1) prior to a public disclosure as described in this paragraph has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (2) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this act.

[N.J.S.A. 2A:32C-9(c).]

In the related legislative history, the Assembly explained it was revising the NJFC Act "to comply with certain provisions in federal law" because "[c]ompliance would make the State eligible for greater recoveries in Medicaid fraud cases." Assemb. Budget Comm. Statement to A. 5584 (June 27, 2023). The Assembly explained that,

15

[u]nder federal law, a state is entitled to enhanced recovery in Medicaid fraud cases if the Inspector General in the federal Department of Health and Human Services determines that the state has a False Claims Act that is "at least as effective" as the [FCA] in facilitating these whistleblower actions. Presently, the Inspector General has determined that the [NJFC Act] is not "at least as effective" as the [FCA], and has recommended specific revisions. This bill would implement the Inspector General's recommendations.

[Ibid.]

The Legislature adopted the amendments on June 30, 2023, and stated that they were to "take effect immediately." L. 2023, c. 73, § 11.

"Settled rules of statutory construction favor prospective rather than retroactive application of new legislation." Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020) (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014)); see also Twiss v. State, Dep't of the Treasury, 124 N.J. 461, 466 (1991) (explaining that "[g]enerally, courts favor prospective application of statutes"). "In determining whether a statute applies retroactively," the primary goal is to determine whether the Legislature intended the amendment to be prospective or retrospective in application. Pisack, 240 N.J. at 370; Twiss, 124 N.J. at 466-67. Accordingly, our Supreme Court has explained that there are "three scenarios that justify retroactive application of a legislative amendment: '(1) when the Legislature expresses its intent that the law apply retroactively, either expressly

16

or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant.'" Pisack, 240 N.J. at 370 (quoting James, 216 N.J. at 563); see also Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) (explaining that amendments will be applied retroactively when it is "necessary to make the statute workable or to give it the most sensible interpretation").

The 2023 amendments to the NJFC Act used language clearly indicating that the Legislature intended the amendments to apply prospectively. In that regard, the Legislature stated that the amendments "shall take effect immediately." L. 2023, c. 73, § 11. "Our Supreme Court has consistently held that an amendment that is to take effect immediately is to be applied only prospectively." State v. Rosado, 475 N.J. Super. 266, 276 (App. Div. 2023); see also Pisack, 240 N.J. at 371 (explaining that "the Legislature provided that the 2018 amendatory legislation 'shall take effect immediately.' Those 'words bespeak an intent contrary to, and not supportive of, retroactive application.'" (internal citation omitted) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008))).

The amendments to the NJFC Act were also not curative. Although the amendments were designed to bring the NJFC Act into compliance with the

FCA, the Legislature explained that the goal was to enhance recoveries in Medicaid fraud cases.

Federal courts have consistently construed the 2010 amendment to the FCA to apply prospectively. See, e.g., United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 232 n.3 (3d Cir. 2013); United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 n.2 (1st Cir. 2010); United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 914-18 (4th Cir. 2013); Bellevue v. Universal Health Servs. of Hartgrove, Inc., 867 F.3d 712, 717-18 (7th Cir. 2017); Prather v. AT&T, Inc., 847 F.3d 1097, 1103 (9th Cir. 2017). Accordingly, we presume that the New Jersey Legislature was aware of the federal law concerning the prospective application of the new definition of original source and meant to likewise apply the NJFC Act amendments prospectively.

C. Whether the Public Disclosure Provision Bars Plaintiffs' New Jersey Actions.

The public disclosure bar in the NJFC Act prevents a private person from bringing a qui tam action that is based upon publicly disclosed allegations or transactions "unless the person bringing the action is an original source of the information." N.J.S.A. 2A:32C-9(c). Accordingly, the public disclosure provision bars an action by a private person when (1) there has been a prior

public disclosure of the alleged fraud; and (2) the person's lawsuit is based upon "substantially the same allegations or transactions[;]" unless (3) the person is an original source of the information. Ibid.

There is no dispute that there was a prior disclosure of the fraud. Plaintiffs first sued Bayer and Lilly in federal court in Texas, and the complaints in those actions were unsealed in 2017. The NJFC Act identifies allegations made in a "criminal, civil, or administrative hearing in which the State or an agent of the State is a party" as prior disclosures. Ibid. Because the term "hearing" is used identically in the NJFC Act and FCA, we adopt the well-established federal rule that the public disclosure bar applies even when the prior complaint was filed by the same relator. See, e.g., Poteet, 619 F.3d at 113 (holding that the public disclosure bar applies when relator's own lawsuit was the source of the prior public disclosure and noting that after a relator has "blow[n] the whistle on fraud . . . . there seems to be little need to encourage them to give the whistle a second toot"); United States ex rel. Schweizer v. Canon, Inc., 9 F.4th 269, 275-76 (5th Cir. 2021) (relator's prior complaint barred the subsequent action).

There is also no dispute that plaintiffs' allegations in the New Jersey actions are substantially the same allegations they made in the Federal Actions. The complaints in the New Jersey actions identified the same three schemes

identified in the Federal Actions and were brought against the same defendants. Although the New Jersey actions were more limited in scope in that they did not involve claims under the FCA, they included the same claims concerning New Jersey because New Jersey was originally named as a plaintiff in the Federal Actions.

Therefore, a critical issue in these appeals is whether plaintiffs are the original source of the allegations. In 2019, original source was defined to mean "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this act based on the information." N.J.S.A. 2A:32C-9(c) (2010).

Bayer and Lilly argue that plaintiffs are not "individuals" that can qualify as an original source under the NJFC Act because they are limited liability companies, not natural persons. No New Jersey caselaw analyzes the meaning of the word "individual" in the context of the original source exception to the NJFC Act's public disclosure bar. In analyzing other statutes that use both "person" and "individual," the United States Supreme Court has interpreted "individual" to mean "a natural person, and in particular to distinguish between a natural person and a corporation." <u>Mohamad v. Palestinian Auth.</u>, 566 U.S.

449, 454 (2012). Nevertheless, courts in other jurisdictions have assessed whether a corporate entity may be an original source without deciding this issue. See, e.g., United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548 (10th Cir. 1992). We decline to decide this issue because even if a limited liability company may be considered an original source under the NJFC Act, plaintiffs are not an original source because their knowledge is not "direct" and "independent."

In construing "direct" and "independent," we start with the plain language of the statute. See State v. Thompson, 250 N.J. 556, 572 (2022). The definition of "direct" includes "marked by absence of an intervening agency, instrumentality, or influence." Merriam-Webster's Collegiate Dictionary 353 (11th ed. 2020). The definition of "independent" includes "not requiring or relying on something else." Id. at 633. Taking those definitions together, "direct and independent" requires that the relator's knowledge be gained from its own efforts and that the knowledge does not depend on public information.

New Jersey courts have not previously defined the terms direct and independent, but federal courts have. The definitions used by federal courts are consistent with the plain language of the NJFC Act. Federal courts have held that for knowledge to be "direct," it must be "'obtained without any intervening

agency, instrumentality, or influence.'" <u>United States ex rel. Schumann v. Astrazeneca Pharms., L.P.</u>, 769 F.3d 837, 845 (3d Cir. 2014) (quoting <u>United States ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 520 (3d Cir. 2007)) (internal quotation marks omitted). Direct knowledge must be "based on 'first-hand' information," <u>Zizic</u>, 728 F.3d at 239 (quoting <u>United States ex rel. Paranich v. Sorgnard</u>, 396 F.3d 329, 336 (3d Cir. 2005)), and cannot be "derivative of the information of others," <u>Paranich</u>, 396 F.3d at 336 (quoting <u>United States ex rel. Hafter v. Spectrum Emergency Care, Inc.</u>, 190 F.3d 1156, 1162 (10th Cir. 1999)).

In their complaints, plaintiffs acknowledge that they learned of the alleged fraudulent schemes by having their agents conduct a series of interviews. Indeed, those interviews were conducted before plaintiffs, which are limited liability companies, were even formed. Therefore, plaintiffs did not have direct and independent knowledge of the alleged fraud. Instead, they were twice removed from direct knowledge. Their parent corporation used agents to conduct interviews, then analyzed publicly available data. After that information was collected indirectly, plaintiffs were then incorporated to bring the actions. In short, plaintiffs' knowledge was not direct and independent

22

because it came from interviews conducted by agents who, in turn, were not directly involved in the alleged transactions.

Plaintiffs argue that the definition of direct and independent should not be narrowly construed because the goal of the NJFC Act is to root out fraud. The New Jersey Legislature, like Congress, however, has struck a balance. After there is a public disclosure of the alleged fraud, a private party's suit is not always necessary because the Attorney General can investigate and bring a direct action on behalf of the State. See N.J.S.A 2A:32C-5(a), (d). Therefore, applying the plain-language definition of direct and independent maintains the balance of rooting out fraud but also preventing parasitic private lawsuits. Brennan, 454 N.J. Super. at 620.

Having conducted a de novo review, we affirm the orders dismissing plaintiffs' complaints in New Jersey against Bayer and Lilly based on the public disclosure bar. Given that ruling, we need not reach the issues of the first-to-file rule and the sufficiency of the pleadings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

# Exhibit D



# 353RD DISTRICT COURT

**TIM SULAK**
Judge
(512) 854-9380

**MEGAN JOHNSON**
Staff Attorney
(512) 854-4281

**PAMELA SEGER**
Judicial Executive Assistant
(512) 854-9179

HEMAN MARION SWEATT TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767
FAX (512) 854-9332

**RACHELLE PRIMEAUX**
Official Court Reporter
(512) 854-9356

**ERICA SALINAS**
Court Clerk
(512) 854-5886

November 19, 2020

## *VIA E-MAIL*

Ms. Lynne Kurtz-Citrin
Assistant Attorney General
Civil Medicaid Fraud Division
Office of the Attorney General of Texas
*Via Email: lynne.kurtz-citrin@oag.texas.gov*

Mr. Zeke DeRose
The Lanier Law Firm, P.C.
*Via email: zeke.derose@lanierlawfirm.com*

Mr. Christopher J. Schwegmann
Lynn Pinker Hurst & Shcwegmann, LLP
*Via email: cschwegmann@lynnllp.com*

Mr. Michael A. Rogoff
Arnold & Porter Kaye Scholer LLP
*Via email: michael.rogoff@arnoldporter.com*

Mr. Stephen E. McConnico
Scott Douglass & McConnico, LLP
*Via email: smcconnico@scottdoug.com*

Re: **Cause No. D-1-GN-19-007484**; *The State of Texas, ex rel. Health Choice Alliance, LLC v. Eli Lilly and Company, Inc.; in the 201st Judicial District Court, Travis County, Texas*

Re: **Cause No. D-1-GN-19-007487**; *The State of Texas, ex rel. Health Choice Group, LLC v. Bayer Corporation, et al; in the 419th Judicial District Court, Travis County, Texas*

Dear Counsel:

Having considered the pleadings, authorities, and arguments of counsel, prior to ruling on the Motions to Dismiss for Lack of Jurisdiction, I have determined to stay the above-referenced cases pending final determinations of the disputes originally filed in federal court by Relator against these Defendants, or further orders of this court.

Counsel for Plaintiff is requested to draft, circulate, and submit proposed orders for approval as to form by Defendants, consistent with this ruling.

Thank you for your understanding, cooperation, and attention to this matter.

Sincerely,

Tim Sulak

TS:ps

Orig:   Ms. Velva L. Price, District Clerk

# Exhibit E

## CAUSE NO. D-1-GN-19-007484

| | |
|---|---|
| THE STATE OF TEXAS, | IN THE DISTRICT COURT OF |
| *ex rel.* | |
| HEALTH CHOICE ALLIANCE, LLC | TRAVIS COUNTY, TEXAS |
| Plaintiff, | |
| v. | |
| ELI LILLY AND COMPANY | |
| Defendant. | 201ST JUDICIAL DISTRICT |

## ORDER STAYING THE CASE

The Court, after a November 18, 2020 hearing with the parties, and having considered the pleadings, authorities and arguments of counsel, is of the opinion that the above-referenced case should be stayed.

It is hereby **ORDERED** that the above-referenced case be STAYED pending final determination of the case Relator brought against Defendant in the Eastern District of Texas that is currently pending in the United States Court of Appeals for the Fifth Circuit and until all appeals are exhausted, or until other Order of this Court.

It is further **ORDERED** that the parties provide the Court with any updates about the case referenced above.

IT IS SO ORDERED.

**SIGNED this _____ day of December, 2020.**

_____
THE HONORABLE TIM SULAK
JUDGE PRESIDING

ORDER STAYING CASE

AGREED:

_____
W. Mark Lanier (co-lead counsel)
WML@LanierLawFirm.com
Texas State Bar No. 11934600
Kenneth W. Starr
Ken.Starr@LanierLawFirm.com
Texas State Bar No. 24106919
Christopher L. Gadoury
Chris.Gadoury@LanierLawFirm.com
Texas State Bar No. 24034448
Jonathan Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
Texas State Bar No. 24050162
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Texas State Bar No. 2405721
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N, Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Fax: (713) 659-2204

Samuel F. Baxter (co-lead counsel)
sbaxter@mckoolsmith.com
Texas State Bar No. 01938000
Jennifer L. Truelove
jtruelove@mckoolsmith.com
Texas State Bar No. 24012906
**MCKOOL SMITH P.C**.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Fax: (903) 923-9099

Eric B. Halper
ehalper@mckoolsmith.com
(*pro hac vice to follow*)
Radu A. Lelutiu
rlelutiu@mckoolsmith.com
(*pro hac vice to follow*)

ORDER STAYING CASE

**MCKOOL SMITH P.C.**
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400
Fax: (212) 402-9444

*ATTORNEYS FOR RELATOR*


/s/  Christopher J. Schwegmann
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 – Telephone
(214) 981-3829 – Facsimile

Michael A. Rogoff (admitted *pro hac vice*)
michael.rogoff@arnoldporter.com
Sara L. Shudofsky (admitted *pro hac vice*)
sara.shudofsky@arnoldporter.com
Debra E. Schreck (admitted *pro hac vice*)
debra.schreck@arnoldporter.com
**ARNOLD & PORTER KAYE
SCHOLER LLP**
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000


**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christopher Schwegmann
Bar No. 24051315
cschwegmann@lynnllp.com
Envelope ID: 104299632
Filing Code Description: Motion (No Fee)
Filing Description: DEFENDANT ELI LYLLY AND COMPANY'S MOTION TO STRIKE PLAINTIFF'S DEFECTIVE NOTICE OF NONSUIT
Status as of 8/13/2025 8:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | | jonathan.wilkerson@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Courtney Walton | | courtney.walton@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Alex J.  Brown | | alex.brown@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 8/13/2025 12:01:50 AM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 8/13/2025 12:01:50 AM | SENT |
| Emily Olson | | Emily.Olson@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Samuel Baxter | | sbaxter@mckoolsmith.com | 8/13/2025 12:01:50 AM | SENT |
| W MarkLanier | | wml@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Jennifer Truelove | | jtruelove@mckoolsmith.com | 8/13/2025 12:01:50 AM | SENT |
| Cynthia Lu | | cynthia.lu@oag.texas.gov | 8/13/2025 12:01:50 AM | ERROR |
| Susan Miller | | susan.miller@oag.texas.gov | 8/13/2025 12:01:50 AM | ERROR |
| Christopher Gadoury | | chris.gadoury@lanierlawfirm.com | 8/13/2025 12:01:50 AM | ERROR |
| Eric Halper | | ehalper@mckoolsmith.com | 8/13/2025 12:01:50 AM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 8/13/2025 12:01:50 AM | SENT |
| SCOTT SMOOT | | ssmoot@lynnllp.com | 8/13/2025 12:01:50 AM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 8/13/2025 12:01:50 AM | SENT |
| Zeke DeRose | | Zeke.derose@lanierlawfirm.com | 8/13/2025 12:01:50 AM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 8/13/2025 12:01:50 AM | SENT |
| Kasdin Mitchell | 24135030 | kasdin.mitchell@kirkland.com | 8/13/2025 12:01:50 AM | SENT |
| Gary Vogt | | gvogt@kirkland.com | 8/13/2025 12:01:50 AM | SENT |
| Griffin Vail | | griffin.vail@kirkland.com | 8/13/2025 12:01:50 AM | SENT |

# Exhibit C

to Relator's letter of August 20, 2025

8/14/2025 6:23 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-007484
Antonio Hill

CAUSE NO. D-1-GN-19-007484

| | |
|---|---|
| THE STATE OF TEXAS, | |
| *ex rel.* | |
| HEALTH CHOICE ALLIANCE, LLC | IN THE DISTRICT COURT |
| Plaintiff, | 201ST JUDICIAL DISTRICT |
| v. | TRAVIS COUNTY, TEXAS |
| ELI LILLY AND COMPANY, INC., | |
| Defendant. | |

## TEXAS'S NOTICE OF CONSENT TO DISMISSAL AND STATEMENT OF INTEREST IN RESPONSE TO DEFENDANT'S MOTION TO STRIKE

The State of Texas respectfully files this Notice of Consent to Dismissal and Statement of Interest in response to Defendant Eli Lilly and Company's Motion to Strike Plaintiff's Defective Notice of Nonsuit.

### I.    NOTICE OF CONSENT TO DISMISSAL

Pursuant to Tex. Hum. Res. Code § 36.001, the State of Texas hereby notifies the Court that it consents to Plaintiff-Relator Health Choice Alliance, LLC's (HCA) request to voluntarily dismiss its claims without prejudice, effectuated by the Notice of Nonsuit it filed on August 11, 2025.

The State consents to dismissal so that HCA and the State may prosecute their claims in a venue that already has substantial experience presiding over claims similar to those HCA asserted in this litigation, the District Court for the 71st Judicial District, Harrison County, Texas (the "Harrison County Court").

The Harrison County Court has already presided over a lawsuit asserting claims that mirror

HCA's claims here, which resulted in a significant recovery for the State,[1] and is currently presiding over three lawsuits asserting similar claims.[2] The State believes that the interests of efficiency and judicial economy are best served by having a single judge—who is already thoroughly familiar with the issues in dispute—preside over similar claims challenging similar conduct.

Despite Defendant's protestations to the contrary, a hearing on this matter is unnecessary. Only when the State dismisses the action over the objections of a relator need the Court expend judicial resources on a hearing. *See* Tex. Hum. Res. Code § 36.107(b)(2).

## II. STATEMENT OF INTEREST

Having satisfied Defendant's concern that the State had not yet filed its written consent to the dismissal, the remainder of Defendant's Motion to Strike is comprised of its disappointment that the State of Texas intends to pursue all available relief. *See, e.g.*, Def.'s Mtn at 10. This is not a cognizable basis to strike HCA's Notice of Nonsuit, nor does it afford this Court with a basis to withhold its consent to dismissal.

In support of its Motion, Defendant argues that the Court should strike HCA's Notice because it contends that the State is precluded from initiating its own action and is instead required to intervene in this matter. *Id.* at 3. That is wrong. While the THFPA empowers relators to file *qui tam* actions on behalf of the State and share in a portion of the proceeds that are recovered, Tex. Hum. Res. Code § 36.101, the law does not require the State to wait to intervene in an action before it may vindicate its interests. *Compare id.* at 11, *with* Tex. Hum. Res. Code §§ 36.051; 36.052(e) (authorizing the Attorney General to initiate an action under the Texas Health Care Program

---

[1] *State of Texas, ex rel. Health Choice Advisory, LLC v. Shire PLC*, No. 20-0415.
[2] *State of Texas, ex rel. SCEF, LLC v. AstraZeneca Pharmaceuticals, Inc.*, No. 22-426; *State of Texas, ex rel. Health Choice Advocates, LLC v. Gilead Sciences, Inc.*, No. 23-0800; and *State of Texas, ex rel. Health Selection Group, LLC v. Novartis Pharmaceuticals, LP*, No. 23-0276.

Fraud Prevention Act (THFPA)). Even when a *qui tam* is filed, the THFPA authorizes the State to "elect to pursue the state's claim through any alternate remedy available to [it]," including in a separate lawsuit. Tex. Hum. Res. Code § 36.109(a). This makes sense: the injuries under the THFPA are the State's, *see* Tex. Hum. Res. Code § 36.052(a), and the State controls the case and its investigation. *See, e.g.*, Tex. Hum. Res. Code § 36.107(b) (authorizing the State to dismiss a *qui tam* over the relator's objections).

Similarly, the THFPA does not contemplate that the State's declination would ever be binding. To the contrary, the THFPA allows the State to change its position over time. For example, Tex. Hum. Res. Code § 36.104(b-1) allows for intervention "*at a later date*" and provides *no time limit* on that intervention, regardless of an initial declination. If the Legislature had intended that the State's declination would bind it forever, it would have included such language. *Id.* Because the State is entitled to a portion of the proceeds of THFPA actions, it maintains a consistent interest in any THFPA matter. *See* Tex. Hum. Res. Code § 36.110. For example, in the context of the False Claims Act, courts recognize that the government may change its position when it "realize[s] the magnitude of the alleged fraud was much larger than it had originally anticipated." *United States ex rel. Grob v. Precision Cable Assembles, Inc.*, No. 22-CV-570-JPS, 2023 WL 1865338, at *1 (E.D. Wis. Feb. 9, 2023) (citations omitted). The same applies here, and the State retains the ability to vindicate its interests either through intervention or by initiating its own lawsuit.

Defendant's Motion to Strike grafts requirements on the State that the Legislature did not include in the statute, and the Motion should be denied.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil
Litigation

**AMY SNOW HILTON**
Chief, Healthcare Program Enforcement Division
Texas State Bar No. 24097834
Amy.Hilton@oag.texas.gov

*/s/ Paige L. Cheung*
**PAIGE L. CHEUNG**
Assistant Attorney General
Texas State Bar No. 24116193
Paige.Cheung@oag.texas.gov

Healthcare Program Enforcement Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

**COUNSEL FOR TEXAS**

## CERTIFICATE OF SERVICE

I certify that on August 14, 2025, a true and correct copy of the foregoing has been served

electronically on all counsel of record.

*/s/ Paige L. Cheung*
**PAIGE L. CHEUNG**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104408224
Filing Code Description: Notice
Filing Description: TEXAS NOTICE OF CONSENT TO DISMISSAL AND STATEMENT OF INTEREST IN RESPONSE TO DEFENDANTS MOTION TO STRIKE
Status as of 8/15/2025 12:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Wilkerson | | jonathan.wilkerson@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |
| Courtney Walton | | courtney.walton@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |
| Alex J. Brown | | alex.brown@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |
| Emily Olson | | Emily.Olson@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |
| Samuel Baxter | | sbaxter@mckoolsmith.com | 8/14/2025 6:23:13 PM | SENT |
| W MarkLanier | | wml@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |
| Jennifer Truelove | | jtruelove@mckoolsmith.com | 8/14/2025 6:23:13 PM | SENT |
| Cynthia Lu | | cynthia.lu@oag.texas.gov | 8/14/2025 6:23:13 PM | ERROR |
| Susan Miller | | susan.miller@oag.texas.gov | 8/14/2025 6:23:13 PM | ERROR |
| Christopher Gadoury | | chris.gadoury@lanierlawfirm.com | 8/14/2025 6:23:13 PM | ERROR |
| Eric Halper | | ehalper@mckoolsmith.com | 8/14/2025 6:23:13 PM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 8/14/2025 6:23:13 PM | SENT |
| Gary Vogt | | gvogt@kirkland.com | 8/14/2025 6:23:13 PM | SENT |
| Griffin Vail | | griffin.vail@kirkland.com | 8/14/2025 6:23:13 PM | SENT |
| Zeke DeRose | | Zeke.derose@lanierlawfirm.com | 8/14/2025 6:23:13 PM | SENT |

Associated Case Party: ELI LILLY AND COMPANY INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Yaman Desai | | ydesai@lynnllp.com | 8/14/2025 6:23:13 PM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 8/14/2025 6:23:13 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104408224
Filing Code Description: Notice
Filing Description: TEXAS NOTICE OF CONSENT TO DISMISSAL AND STATEMENT OF INTEREST IN RESPONSE TO DEFENDANTS MOTION TO STRIKE
Status as of 8/15/2025 12:37 PM CST

Associated Case Party: ELI LILLY AND COMPANY INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 8/14/2025 6:23:13 PM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 8/14/2025 6:23:13 PM | SENT |
| Kasdin Mitchell | 24135030 | kasdin.mitchell@kirkland.com | 8/14/2025 6:23:13 PM | SENT |
| SCOTT SMOOT | | ssmoot@lynnllp.com | 8/14/2025 6:23:13 PM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 8/14/2025 6:23:13 PM | SENT |

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy SnowHilton | | amy.hilton@oag.texas.gov | 8/14/2025 6:23:13 PM | SENT |
| Paige Cheung | | paige.cheung@oag.texas.gov | 8/14/2025 6:23:13 PM | SENT |
| Lauren Sibley | | lauren.sibley@oag.texas.gov | 8/14/2025 6:23:13 PM | SENT |

# Exhibit D

to Relator's letter of August 20, 2025

8/14/2025 11:16 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-19-007484
Antonio Hill

**CAUSE NO. D-1-GN-19-007484**

| | |
|---|---|
| THE STATE OF TEXAS, | |
| *ex rel.* | IN THE DISTRICT COURT |
| HEALTH CHOICE ALLIANCE, LLC | 201ST JUDICIAL DISTRICT |
| Plaintiff, | TRAVIS COUNTY, TEXAS |
| v. | |
| ELI LILLY AND COMPANY, INC., | |
| Defendant. | |

## RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S NOTICE OF NONSUIT

Plaintiff-Relator Health Choice Alliance, LLC's ("HCA") respectfully files this Response to Defendant Eli Lilly and Company, Inc.'s ("Lilly") Motion to Strike Plaintiff's Notice of Nonsuit (the "Motion"). For the reasons explained herein, the Motion should be denied.

Stripped of rhetoric, the Motion boils down to two arguments, specifically that (i) HCA's August 11 Notice of Nonsuit (the "Notice") is allegedly "defective" because the Office of the Attorney General ("OAG") has not consented to dismissal in writing; and (ii) if HCA attempted to cure its allegedly defective Notice, Lilly should be given an opportunity to respond through briefing and a hearing. Neither argument passes muster.

*First*, Lilly is correct that, before a lawsuit asserting violations of the Texas Health Care Program Fraud Prevention Act ("THFPA") is dismissed, Texas law requires OAG to "consent in writing to the dismissal and state the[] reasons for consenting." Tex. Hum. Res. Code § 36.102(e). But nothing in the text of the THFPA requires this consent to be provided before or contemporaneously with the plaintiff-relator's notice of dismissal. OAG has now provided written

1

consent to dismissal and explained its reasoning, which is entirely legitimate. That is the end of the matter.

Second, there is no merit to Lilly's protestations that, if HCA cured its "defective" Notice, Lilly is entitled to brief any issue and have a "hearing." For the reasons explained above, the Notice was not "defective" and there is thus no "defect" for HCA to cure. While this self-executing Notice may not have been perfected until OAG filed it written consent to dismissal, that event has now taken place. Further, Lilly's request for briefing and a hearing" is baseless. HCA has an *absolute* right to file a nonsuit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (a plaintiff has an "absolute right" to file a nonsuit and "a trial court is without discretion to refuse an order dismissing a case . . . unless collateral matters remain.").[1] No collateral issues, *e.g.*, motions for sanctions or counterclaims, remain.

And the THFPA does not provide for "briefing and a hearing" when the party opposing dismissal is *the defendant*. *Compare* Tex. Hum. Res. Code § 36.107(b) ("The state may dismiss the action notwithstanding the objections of the *person bringing the action* if: . . . (1) the attorney general notifies the person that the state has filed a motion to dismiss; and (2) the court provides the person with an opportunity for a hearing on the motion."). As such, arguments HCA made *as a plaintiff* in federal litigation against Lilly (*see* Mot. at 14) are beside the point.

While the remainder of Lilly's arguments have no bearing on the question before the Court, it is important to correct the record:

- Lilly asserts that HCA and the State are forum-shopping. Mot. at 12. Not true. As the State explained in its August 14 filing, OAG wishes to proceed in Harrison County because the court there is already presiding and has presided over several

---

[1] *See also Villafani v. Trejo*, 251 S.W.3d 466, 468-69 (Tex. 2008) (same); *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (same); *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997) (orig. proceeding) (per curiam) (same).

2

lawsuits asserting claims similar to HCA's.[2] The State believes that the interests of efficiency and judicial economy are best served by having a single judge—who is already thoroughly familiar with the issues in dispute—preside over similar claims, challenging similar conduct.

- Lilly asserts that HCA filed its notice "to avoid an unfavorable ruling *on the merits*." Mot. at 12 (emphasis added). Not true. There is no *merits*-related motion pending before this Court. To the contrary, the only motion Lilly has filed argues that, under the first-to-file bar, this Court subject matter lacks jurisdiction. *See* Ex. 1. It is black-letter law that dismissals based on the first-to-file bar are *without prejudice*. This is because the first-to-file bar includes a temporal element; once the first-filed claims are no longer pending, the bar goes away.[3] Indeed, that is why the parties here agreed to stay this matter until the first-filed case (HCA's federal lawsuit) was being litigated on appeal.

- Lilly argues that, if the State decides to intervene and support HCA's claims, it must do so in *this action*, not the action the State and HCA filed jointly in Harrison County. But Lilly previously argued that, under the THFPA's first-to-file bar, "this action was flawed from the moment it was filed" and "should be dismissed." Ex. 1 at 2. Lilly cannot have it both ways.

- Lilly argues that venue in Harrison County is not proper. But Lilly ignores the venue allegations in the Harrison County petition and, in any event, it is free to challenge venue in the Harrison County lawsuit.

At bottom, having argued that this Court has no jurisdiction to adjudicate HCA's claims, Lilly has no basis to oppose HCA's request that it be allowed to proceed elsewhere, before a court that has acquired the subject matter expertise to resolve the merits of the parties' dispute most efficiently.

HCA respectfully requests that the Court deny Lilly's Motion.

---

[2] *State of Texas, ex rel. Health Choice Advisory, LLC v. Shire PLC*, No. 20-0415; *State of Texas, ex rel. SCEF, LLC v. AstraZeneca Pharmaceuticals, Inc.*, No. 22-426; *State of Texas, ex rel. Health Choice Advocates, LLC v. Gilead Sciences, Inc.*, No. 23-0800; and *State of Texas, ex rel. Health Selection Group, LLC v. Novartis Pharmaceuticals, LP*, No. 23-0276.

[3] *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 365 (7th Cir. 2010); *United States ex rel. McGuire v. Millennium Labs., Inc.*, 923 F.3d 240, 250-51 (1st Cir. 2019); *United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85-86 (2d Cir. 2017); *United States v. Sanofi-Aventis U.S. LLC (In re Plavix Mktg.)*, 974 F.3d 228, 232 (3d Cir. 2020); *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 120-21 (D.C. Cir. 2015).

3

August 14, 2025

Respectfully submitted,

<table>
<tr>
<td>

*/s/ Sam Baxter*

Samuel F. Baxter (co-lead counsel)
sbaxter@mckoolsmith.com
Jennifer L. Truelove
jtruelove@mckoolsmith.com
MCKOOL SMITH P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Fax: (903) 923-9099

Eric B. Halper
ehalper@mckoolsmith.com
(*pro hac vice to follow*)
Radu A. Lelutiu
rlelutiu@mckoolsmith.com
(*pro hac vice to follow*)
MCKOOL SMITH P.C.
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 402-9400
Fax: (212) 402-9444

</td>
<td>

*/s/ W. Mark Lanier*

W. Mark Lanier (co-lead counsel)
WML@LanierLawFirm.com
Alex Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Jonathan Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
THE LANIER FIRM
10940 W Sam Houston Pkwy N
Suite 100 Houston, Texas 77064
Telephone: (866) 341-6109

</td>
</tr>
</table>

***ATTORNEYS FOR RELATOR***

4

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document has been served on

Defendant through the Court's e-filing system.

/s/ *Zeke DeRose*
Zeke DeRose


Exhibit 1

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| *ex rel.* | § | |
| HEALTH CHOICE ALLIANCE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 201ST JUDICIAL DISTRICT |
| | § | |
| ELI LILLY AND COMPANY, INC. | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

---

## ELI LILLY AND COMPANY'S MOTION TO DISMISS
## FOR LACK OF JURISDICTION

---

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY, INC**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

    A.     Procedural Background.................................................................................. 2

           1.     Relator's Action in the Eastern District of Texas..................................... 2

           2.     The United States Moved to Dismiss Relator's Action ............................ 4

           3.     Relator's Appeal of the Federal Decision ................................................ 8

    B.     The Instant Action....................................................................................... 8

ARGUMENT .......................................................................................................................... 8

THE FIRST-TO-FILE JURISDICTIONAL BAR OF THE TMFPA REQUIRES
DISMISSAL OF THIS SUIT. ................................................................................................ 8

    A.     Legal Framework ........................................................................................ 9

    B.     The First-to-File  Bar Applies to the Instant Action. ........................................... 11

CONCLUSION...................................................................................................................... 14

**Cases**

*Axel Johnson Inc. v. Arthur Andersen & Co.*,
6 F.3d 78 (2d Cir.1993)......................................................................................................13

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000).................................................................................................10

*Carey v. Bank of Am., N.A.*,
904 F. Supp. 2d 617 (N.D. Tex. 2012) ..............................................................................13

*Cty. of Cameron v. Brown*,
80 S.W.3d 549 (Tex. 2002).................................................................................................10

*de Rodulfa v. United States*,
461 F.2d 1240 (D.C. Cir.1972)...........................................................................................12

*Freedom Commc'ns, Inc. v. Coronado*,
372 S.W.3d 621 (Tex. 2012).................................................................................................2

*Health Choice All. v. Eli Lilly*,
No. 5:17-cv-123-RWS-CMC, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018).........................4

*Health Choice All. v. Eli Lilly*,
No. 5:17-cv-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018)......................3, 4

*Hearts Bluff Game Ranch, Inc. v. State*,
381 S.W.3d 468 (Tex. 2012)...............................................................................................10

*In re Lara*,
731 F.2d 1455 (9th Cir. 1984) ............................................................................................13

*Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*,
575 U.S. 650, 135 S. Ct. 1970 (2015).................................................................................12

*Mohamed v. Exxon Corp.*,
796 S.W.2d 751 (Tex. App.—Houston [14th Dist.] 1990), *writ denied*............................10, 11

*New Jersey ex rel. Health Choice All., LLC v. Eli Lilly and Co., Inc.*,
HNT-L-000445-19 (N.J. Super. Ct. Oct. 28, 2019)................................................................9

*Texas Dep't of Parks and Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004)...............................................................................................10

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*,
560 F.3d 371 (5th Cir. 2009) ..........................................................................................11, 13

*U.S. ex rel. Capshaw v. White*,
   No. 3:12-CV-4457-N, 2020 WL 707815 (N.D. Tex. Feb. 12, 2020) ....................................15

*U.S. ex rel. Carter v. Halliburton Co.*,
   19 F. Supp. 3d 655 (E.D. Va. 2014) ...........................................................................12

*U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*,
   --- F.3d ---, 2020 WL 4743033 (7th Cir. Aug. 17, 2020) ...........................................8

*U.S. ex rel. Cunningham v. Millennium Labs., Inc.*,
   202 F. Supp. 3d 198 (D. Mass. 2016), *rev'd and remanded on other grounds*,
   923 F.3d 240 (1st Cir. 2019).......................................................................................12

*U.S. ex rel. Edgett v. Kimberly-Clark Corp.*,
   No. 3:15-CV-0434-B, 2017 WL 4222697 (N.D. Tex. Sept. 22, 2017) .......................11, 12, 13

*U.S. ex rel. Health Choice All., LLC v. Eli Lilly and Co., Inc.*,
   No. 5:17-cv-123-RWS-CMC (E.D. Tex.), Docket Report .........................................2

*U.S. ex rel. Kelly v. Novartis Pharm. Corp.*,
   827 F.3d 5 (1st Cir. 2016)............................................................................................11

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
   149 F.3d 227 (3d Cir. 1998)........................................................................................11, 13, 14

*U.S. ex rel. May v. Purdue Pharma. L.P.*,
   737 F.3d 908 (4th Cir. 2013) ......................................................................................13

*U.S. ex rel. v. Planned Parenthood of Houston*,
   570 F. App'x 386 (5th Cir. 2014) ...............................................................................10

*U.S. ex rel. Wood v. Allergan, Inc.*,
   899 F.3d 163 (2d Cir. 2018)........................................................................................11, 15

*U.S. ex rel. Zelickowski v. Albertsons LLC*,
   No. SA-15-CV-957-XR, 2018 WL 6609571 (W.D. Tex. Dec. 17, 2018)...................12, 15

*W & T Offshore, Inc. v. Fredieu*,
   No. 18-1134, 2020 WL 3240869 (Tex. June 5, 2020)................................................11

**Statutes**

31 U.S.C. § 3730............................................................................................... *passim*

42 U.S.C. §1320a–7b.................................................................................................3

FALSE CLAIMS ACT, 31 U.S.C. § 3729................................................................. *passim*

TEX. HUM. RES. CODE §§ 36.001–.132 .........................................................1, 2, 10, 13

**Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 9(b)................................................................3, 4

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ...............................................................3

TEX. R. EVID. 201(c)–(d) ............................................................................................2

**PRELIMINARY STATEMENT**

The TEXAS MEDICAID FRAUD PREVENTION ACT ("TMFPA"), which is similar to the federal FALSE CLAIMS ACT ("FCA"), permits a private citizen who suffered no injury, called a "relator," to bring a *qui tam* lawsuit alleging a purported fraud committed against the state and receive a portion of any recovery. Given the potential for abuse from relators seeking to take advantage of potential monetary awards, both the TMFPA and the FCA require relators to clear certain statutory thresholds. One such threshold is the "first-to-file bar," which requires dismissal of a second *qui tam* action if it is "based on the facts underlying a pending action brought under" the TMFPA. TEX. HUM. RES. CODE § 36.106. The rationale for the bar is simple: once the first action has been filed, the government has been placed on notice of allegations of fraud and can investigate. The second lawsuit is unnecessary. There are only two requirements for the first-to-file bar to apply: (1) the later-filed suit must have been filed while the prior action was "pending"; and (2) the later-filed suit is "related" insofar as it alleges "the same material or essential elements of fraud" as its predecessor. While that first related action is pending, no complaint alleging the same fraud may be filed, even if brought by the same relator.

Both of these predicates for application of the first-to-file bar are satisfied here. First, at the time relator Health Choice Alliance, LLC ("Relator") filed the instant action in Texas state court, Relator's federal *qui tam* action against Eli Lilly and Company ("Lilly")[1] in the Eastern District of Texas was pending (and it remains pending). Second, these two cases filed by Relator are clearly "related" to one another: they allege the very *same fraud* through the *same three purported schemes*, by the *same defendant*, involving the *same medications*. They also seek

---

[1] Although Relator identifies "Eli Lilly and Company, Inc." as the defendant in this action, the appropriate entity name is Eli Lilly and Company.

1

recovery under the *same statute* (the TMFPA) on behalf of the *same government healthcare program* (Texas Medicaid) using the *same information* from the same "*witnesses*," whose purported quotes were lifted verbatim from the federal complaint.

Accordingly, this action was flawed from the moment it was filed.  Under the TMFPA's first-to-file bar, the Court lacks jurisdiction over the action, and it should be dismissed.

**BACKGROUND**

### A.     **Procedural Background**

On October 28, 2019, Relator filed this lawsuit under the TMFPA, TEX. HUM. RES. CODE §§ 36.001–.132.  *See* Declaration of Chris Schwegmann ("Schwegmann Decl."), Ex. A (Original Petition, Oct. 28, 2019) ("Petition" or "Pet.").  This is the second action filed by this professional relator against Lilly advancing the same allegations of purported fraud.  The procedural history and current status of the first action, which dates back to 2017, are outlined below.

### 1.      Relator's Action in the Eastern District of Texas

On June 15, 2017, Relator filed a complaint in the Eastern District of Texas against Lilly and other companies under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), the TMFPA and thirty other state FCA statutes (the "Federal Action"). *See* Schwegmann Decl., Ex. B (*U.S. ex rel. Health Choice All., LLC v. Eli Lilly and Co., Inc.*, No. 5:17-cv-123-RWS-CMC (E.D. Tex.), Docket Report) at Dkt. 1.[2]  In that complaint, Relator alleged that Lilly's nurse education and reimbursement support services constitute illegal "remuneration" in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a–7b ("AKS").  The nurse

---

[2] Lilly respectfully asks the Court to take judicial notice of the documents and court records referenced herein, copies of which have been submitted with this motion.  A court must take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," if a party requests it and provides the documents to the court.  *See* TEX. R. EVID. 201(c)–(d). Courts routinely take judicial notice of another court's records.  *See, e.g.*, *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (citing cases).

education services teach patients how to inject their prescribed Lilly medications (Humulin® or Humalog® for diabetes, or Forteo® for osteoporosis—together, the "Relevant Medications"); the reimbursement support services provide patients with information about how to navigate the often-complex reimbursement process for Forteo® so they can access the medication their doctor has prescribed. Schwegmann Decl., Ex. B at Dkt. 1 ¶¶ 81–82, 108. Relator alleged that the purported kickbacks resulted in the submission of false reimbursement claims to government healthcare programs, including the Medicaid program, in violation of the FCA, the TMFPA and other state FCA statutes.

On October 30, 2017, the United States declined to intervene in Relator's action, as did the state of Texas and the other states Relator named as plaintiffs. *See* Schwegmann Decl., Ex. B at Dkt. 8. On January 12, 2018, Relator filed its First Amended Complaint ("FAC") in the Federal Action. *Id.* at Dkt. 42. Lilly moved to dismiss the FAC on February 21, 2018. *Id.* at Dkts. 66, 68–69, 71. On July 25, 2018, Magistrate Judge Caroline M. Craven issued a Report & Recommendation ("R&R") recommending that Lilly's motion to dismiss Relator's federal and state law claims be granted without prejudice for Relator's failure to plead fraud with the requisite particularity under FEDERAL RULE OF CIVIL PROCEDURE 9(b) ("Rule 9(b)"), and that Lilly's FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) motion be denied without prejudice. *Health Choice All. v. Eli Lilly*, No. 5:17-cv-123-RWS-CMC, 2018 WL 4026986, at *61 (E.D. Tex. July 25, 2018). Specifically, Magistrate Judge Craven found that Relator had "fail[ed] to provide sufficient detail at every step" and "ha[d] not met its burden of sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits." *Id.* at *45, *50 (internal citation and quotation marks omitted).

3

On August 10, 2018, Judge Robert W. Schroeder adopted the R&R in full. *See Health Choice All. v. Eli Lilly*, No. 5:17-cv-123-RWS-CMC, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018).

Relator filed its Second Amended Complaint ("SAC") in the Federal Action on September 12, 2018. *See* Schwegmann Decl., Ex. B at Dkts. 171–172. The SAC included the same allegations of fraud as its predecessor regarding the same Lilly programs related to the same medications that Relator attacked in the FAC. *See* Schwegmann Decl., Ex. C (SAC). On November 13, 2018, Lilly filed another motion to dismiss, arguing that Relator had failed to cure the Rule 9(b) deficiencies in its complaint. *See* Schwegmann Decl., Ex. B at Dkt. 183. Lilly also requested that, prior to deciding the Rule 9(b) motion, the court strike all portions of the SAC that were based on information that Relator had obtained from so-called "confidential interviewees" using deceptive tactics. Relying on witness declarations and other documents, Lilly showed that Relator and its affiliate, National Healthcare Analysis Group ("NHAG"), had lied to the witnesses, obtaining information under the false pretense of conducting an unbiased "research study" through interviews conducted by or under the direction of licensed lawyers, in violation of the rules of professional conduct prohibiting deceitful conduct by lawyers. *Id.*[3]

### 2. The United States Moved to Dismiss Relator's Action

On December 17, 2018, before briefing was complete on Lilly's motion to dismiss, the United States Department of Justice (the "United States" or "Government") filed its own motion to dismiss Relator's action pursuant to a provision in the FCA (31 U.S.C. § 3730(c)(2)(A)) that authorizes the Government—the real party-in-interest in an FCA case—to seek dismissal of a *qui tam* action over the objections of the relator who brought it. *See id.* at Dkt. 192. In addition to

---

[3] In addition to its motion to dismiss, Lilly filed a motion for summary judgment on November 23, 2018, seeking dismissal of Relator's action based on the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4)(A). Schwegmann Decl., Ex. B at Dkt. 182.

seeking dismissal of Relator's action against Lilly, the Government also moved to dismiss nine other cookie-cutter *qui tam* actions filed by the same corporate relator against more than thirty other companies in seven federal judicial districts across the country, all of which alleged the same purported fraud.[4] *See id.* at 2–4.

In its briefing, the United States noted that the complaints filed by this corporate relator were "clone[s]" of one another, presenting the same allegations related to nurse education and reimbursement support programs. *See id.* at 3, 6. The United States also noted that Relator, having no first-hand knowledge of its own, used "false pretenses . . . to obtain information from witnesses" that formed the substance of its complaint; specifically, Relator told witnesses that it was conducting a "research study" and represented to those witnesses that it had "no bias one way or the other" about the pharmaceutical industry—when, in fact, this relator entity had been created for the sole purpose of bringing an FCA lawsuit, was seeking information not for "research" but for purposes of bringing the lawsuit and was conducting the interviews by or at the direction of attorneys. *Id.* at 6.

With respect to the merits of the action, the United States explained that it had conducted an extensive investigation of Relator's allegations. That investigation included the collection and review of tens of thousands of documents from defendants and third parties, interviews of numerous witnesses (including prescribing physicians) and consultation with subject matter experts at the Office of the Inspector General of the United States Department of Health and Human Services ("OIG"). After its investigation, the United States concluded that Relator's

---

[4] The United States noted that "all named plaintiff states consent[ed] to the United States' motion to dismiss so long as it is without prejudice as to the states, with the exception of New Jersey, which takes no position on the motion." Schwegmann Decl., Ex. B at Dkt 192 at 1 n.1.

5

allegations were not legally or factually supported. Schwegmann Decl., Ex. B at Dkt. 192 at 14–16.

The United States further stated that Relator's attack on "the provision of educational information and instruction to patients"—the essence of Relator's allegations—"conflict[s] with important policy and enforcement prerogatives of the federal government's healthcare programs." *Id.* at 16. The programs at issue, the United States explained, are not only lawful, but they actually benefit patients as well as government healthcare programs: "[F]ederal healthcare programs have a strong interest in ensuring that, after a physician has appropriately prescribed a medication, patients have access to basic product support relating to their medication." *Id.* Relator "should not be permitted to indiscriminately advance claims on behalf of the government against an entire industry that would undermine common industry practices the federal government has determined are, in this particular case, appropriate and beneficial to federal healthcare programs and their beneficiaries." *Id.*

Further, the Government explained that the continuation of Relator's lawsuit would "yield substantial litigation burdens for the United States." *Id.* at 15. The Government described that burden as requiring it to collect, review and produce documents, respond to written discovery requests, file statements of interest and prepare and defend witnesses from various governmental agencies for deposition. *Id.* That burden was unwarranted because of the lack of merit of Relator's case and because the case would divert the Government's already limited resources away from meritorious matters. *Id.* at 15–16.

On April 24, 2019, Magistrate Judge Craven held an extensive oral hearing on the United States' motion. *See* Schwegmann Decl., Ex. B at Dkt. 227. On May 16, 2019, Magistrate Judge Craven issued a Report & Recommendation recommending that the United States' motion be

granted and that the action "be dismissed with prejudice as to Relators and without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A) and without prejudice as to all named plaintiff states." *See id.* at Dkt. 232 at 35. Relator filed a Motion for Clarification or Reconsideration on May 30, 2019, asking the court whether the dismissal of Relator's state law claims was intended to be with or without prejudice to Relator and, if the former, to reconsider that ruling. *See id.* at Dkt. 235.

On June 20, 2019, Magistrate Judge Craven granted Relator's Motion for Clarification or Reconsideration and contemporaneously issued an amended report recommending that the United States' motion to dismiss be granted and that the action be dismissed with prejudice as to Relator's claims brought in the name of the United States, without prejudice as to Relator's claims brought in the name of the Plaintiff States, without prejudice as to the United States pursuant to 31 U.S.C. § 3730(c)(2)(A) and without prejudice as to all named Plaintiff States. *See* Schwegmann Decl., Ex. B at Dkts. 240–41.

On September 27, 2019, Judge Schroeder entered an Order dismissing Relator's federal claims with prejudice and state claims without prejudice as to Relator. *Id.* at Dkt. 245 at 18.[5] Judge Schroeder denied all other claims for relief as moot.[6] *Id.*

---

[5] Each district court in which the United States moved to dismiss Relator's cookie-cutter lawsuits granted the Government's motion, with the exception of the Southern District of Illinois, which denied the motion. The United States appealed that denial and, on August 17, 2020, the Seventh Circuit reversed and remanded with instructions to dismiss the action. *See U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*, --- F.3d ---, 2020 WL 4743033, at *14 (7th Cir. Aug. 17, 2020). The Seventh Circuit commented on the merits of Relator's allegations as follows: "The government proposed to terminate this suit in part because, across nine cited agency guidances, advisory opinions, and final rulemakings, it has consistently held that the conduct complained of is probably lawful. Not only lawful, but beneficial to patients and the public. As the government argued in the district court, 'These relators'—created as investment vehicles for financial speculators—'should not be permitted to indiscriminately advance claims on behalf of the government against an entire industry that would undermine . . . practices the federal government has determined are . . . appropriate and beneficial to federal healthcare programs and their beneficiaries.'" *Id.* at *12.

[6] By the time of the order, Lilly's motions to dismiss and for summary judgment had been fully briefed.

### 3. Relator's Appeal of the Federal Decision

Relator filed a Notice of Appeal on October 25, 2019, stating that it was appealing to the Fifth Circuit the September 27, 2019 order from the district court. Schwegmann Decl., Ex. B at Dkt. 247. That Notice was followed the same day by an Amended Notice, stating that Relator was appealing the district court's September 27, 2019 order "to the extent that the Court's Order dismisses with prejudice Relator's federal claims under the FALSE CLAIMS ACT and Anti-Kickback Statute. Relator does not appeal from the District Court's Dismissal Without Prejudice of Relator's state law claims." *Id.* at Dkt. 249. The Fifth Circuit held oral argument on August 5, 2020, and the case is *sub judice*.

### B. The Instant Action

On October 28, 2019, a few days after filing its Notice of Appeal in the Federal Action, Relator filed the instant action. Schwegmann Decl., Ex. A.[7] The substantive allegations in the Petition are identical to those in the Federal Action. Restyled now as an action under *only* the TMFPA—with federal law references and other state counts dropped—the Petition takes aim at the same Lilly programs and medications, seeks recovery on behalf of the same government healthcare program (Medicaid) and uses the same selectively excerpted quotes from the same "interviewees" included in the Federal Action.[8] The Texas Attorney General's Office has, once again, declined to intervene in the action. *See* Schwegmann Decl. ¶ 6.

### ARGUMENT

### THE FIRST-TO-FILE JURISDICTIONAL BAR TMFPA REQUIRES DISMISSAL OF

---

[7] On the same day, Relator also filed a complaint in New Jersey Superior Court. *New Jersey ex rel. Health Choice All., LLC v. Eli Lilly and Co., Inc.*, HNT-L-000445-19 (N.J. Super. Ct. Oct. 28, 2019). The allegations in the New Jersey complaint, like those here, are substantively identical to the allegations in the SAC, but that complaint was restyled as an action under the NEW JERSEY FALSE CLAIMS ACT.

[8] *Compare, e.g.*, Schwegmann Decl., Ex. C ¶¶ 3–7 *with* Schwegmann Decl., Ex. A ¶¶ 4–8; Schwegmann Decl., Ex. C ¶¶ 83–85 *with* Schwegmann Decl., Ex. A ¶¶ 42–43; Schwegmann Decl., Ex. C ¶¶ 95–105 *with*

**THIS SUIT.**

Because this TMFPA suit is substantively identical to Relator's Federal Action (which also included a TMFPA claim) and Relator filed this suit while the Federal Action was still pending, the TMFPA's first-to-file bar divests this Court of jurisdiction over Relator's suit and it must be dismissed.

### A. Legal Framework

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction over an action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.* Whether a court has subject matter jurisdiction is a question of law. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Where, as here, a plea to the jurisdiction challenges the existence (or non-existence) of jurisdictional facts, the Court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *see also Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) ("If evidence central to the jurisdictional issue is submitted, it should be considered in ruling on the plea to the jurisdiction."). In making its ruling, the Court "must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

Under the TMFPA's first-to-file bar, "[a] person other than the state may not intervene or bring a related action based on the facts underlying a pending action brought under this

---

Schwegmann Decl., Ex. A ¶¶ 50–60; Schwegmann Decl., Ex. C ¶¶ 121–140 *with* Schwegmann Decl., Ex. A ¶¶ 73–92; Schwegmann Decl., Ex. C ¶¶ 171–189 *with* Schwegmann Decl., Ex. A ¶¶ 113–117, 119–132; Schwegmann Decl., Ex. C ¶¶ 194–206 *with* Schwegmann Decl., Ex. A ¶¶ 134–146; Schwegmann Decl., Ex. C ¶¶ 455–459 *with* Schwegmann Decl., Ex. A ¶¶ 191, 199.

subchapter." Tex. Hum. Res. Code § 36.106.[9]  The first-to-file bar makes clear that "as long as a first-filed complaint remains pending, no related complaint may be filed."  *U.S. ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 167 (2d Cir. 2018) (quoting *U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011)).  The Fifth Circuit treats the first-to-file bar as a "jurisdictional bar" that divests a court of subject matter jurisdiction over a relator's case "if her suit is based on the same facts underlying a pending case."  *U.S. ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 WL 4222697, at *3 (N.D. Tex. Sept. 22, 2017) (citing *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009)).  The command is "exception free," applying even if the same relator brought both actions.  *See U.S. ex rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 11–12 (1st Cir. 2016) (collecting cases).

The first-to-file bar "furthers the FCA's goal of avoiding piecemeal and duplicative litigation that does not advance the [G]overnment's investigation of alleged fraud."  *Id*. at 11; *see also U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc*., 149 F.3d 227, 234 (3d Cir. 1998) ("[D]uplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.").  Thus, "[i]f the first-filed complaint ensures that the Government 'would

---

[9] The TMFPA's first-to-file bar is virtually identical to the first-to-file bar in the federal FCA, which states that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  The Fifth Circuit has held that "[t]he TFMPA's first-to-file bar operates the same way as the FCA's first-to-file bar."  *U.S. ex rel. v. Planned Parenthood of Houston*, 570 F. App'x 386, 389 n.3 (5th Cir. 2014).  As a result, given the lack of case law construing the TMFPA's first-to-file bar, it is appropriate to look toward federal law interpreting the federal first-to-file bar, particularly in the Fifth Circuit.  Texas courts often consider federal authority, especially that of the Fifth Circuit, where Fifth Circuit jurisprudence is "sufficiently well-developed and coherent to inform" the court's decision.  *See Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 753 (Tex. App.—Houston [14th Dist.] 1990, writ denied).  In following Fifth Circuit interpretation, the Texas Supreme Court has noted that it "would be reluctant to depart from the Fifth Circuit's approach [], which would allow parties in Texas to choose how the statute will be applied merely by choosing a court system."  *See W & T Offshore, Inc. v. Fredieu*, No. 18-1134, 2020 WL 3240869, at *4 n.1 (Tex. June 5, 2020).

10

be equipped to investigate' the fraud alleged in the later-filed complaint," then the first-to-file bar applies and the second suit must be dismissed. *Wood*, 899 F.3d at 169 (quoting *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015)). As the Fifth Circuit has held, a *qui tam* relator may not "merely feed off previous disclosures of fraud." *Branch Consultants,* 560 F.3d at 376.

"Two things must be true for the first-to-file provision to bar a relator's suit." *U.S. ex rel. Zelickowski v. Albertsons LLC,* No. SA-15-CV-957-XR, 2018 WL 6609571, at *2 (W.D. Tex. Dec. 17, 2018). First, the "court must determine whether an earlier-filed action was 'pending" at the time the later-filed suit was filed. *Id.* Second, if the first-filed action was indeed pending, the "court must determine whether [the] two actions are related, and thus whether the prior-filed pending action bars the later-filed one." *Id.*; *see also Edgett*, 2017 WL 4222697, at *3.

### B.     The First-to-File Bar Applies to the Instant Action.

Both of the predicates for application of the first-to-file bar are satisfied here. First, Relator's Federal Action was certainly "pending" when Relator filed the instant suit on October 28, 2019 because the Federal Action was on appeal at that time. An action is pending as long as it "remains undecided" or is "awaiting decision." *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter* ("*KBR*"), 575 U.S. 650, 135 S. Ct. 1970, 1978 (2015). "[A] commonsense reading of the word 'pending' in § 3730(b)(5) requires the conclusion that a first-filed *qui tam* action remains pending while on appeal. To construe the term otherwise, that is, to say that a *qui tam* suit is no longer pending when it is on direct review, would distort the natural meaning of the term." *U.S. ex rel. Carter v. Halliburton Co.*, 19 F. Supp. 3d 655, 661 (E.D. Va. 2014); *see also U.S. ex rel. Cunningham v. Millennium Labs., Inc.*, 202 F. Supp. 3d 198, 203–204 (D. Mass. 2016) (first-filed action was "pending" while it was on appeal), *rev'd and remanded on other*

11

*grounds*, 923 F.3d 240 (1st Cir. 2019).[10] A first-filed action is "no longer pending" only after it "ha[s] been dismissed by the district court, the dismissal has been affirmed by [the applicable Court of Appeals], and certiorari has been denied by the Supreme Court." *U.S. ex rel. May v. Purdue Pharma. L.P.*, 737 F.3d 908, 920 (4th Cir. 2013).

Here, Relator's Federal Action is "pending" notwithstanding Relator's decision not to appeal the dismissal without prejudice of certain of its claims from that action, including its TMFPA claim. The TMFPA's first-to-file bar applies to "pending *action*[*s*]"—not claims. *See* TEX. HUM. RES. CODE § 36.106 (emphasis added). A "civil action" is the entire case, not merely an individual claim. *Carey v. Bank of Am., N.A.*, 904 F. Supp. 2d 617, 620 (N.D. Tex. 2012). *See Edgett*, 2017 WL 4222697, at *3 (defining an "action" as a "civil or criminal judicial proceeding" and noting for purposes of the FCA's first-to-file bar that "[a]n action is no longer pending when, and only when, it is finally decided and dismissed"). The Federal *Action*, which includes claims under the federal FCA, the TMFPA and other state statutes, was pending at the time Relator filed this suit (and will remain pending until entirely resolved)—even if Relator chose not to appeal its TMFPA claim within that *action*.

Second, the instant suit is clearly a "related" action within the meaning of the first-to-file bar. If a "later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action," they are "related," even where the later-filed complaint includes

---

[10] *See, e.g.*, *de Rodulfa v. United States*, 461 F.2d 1240, 1253 (D.C. Cir.1972) ("An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below . . . . Thus the suit is pending until the appeal is disposed of[.]") (internal citation and quotation marks omitted)); *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir.1993) ("[A] case remains 'pending,' and open to legislative alteration, so long as an appeal is pending or the time for filing an appeal has yet to lapse."); *In re Lara*, 731 F.2d 1455, 1459 (9th Cir. 1984) ("Judgment does not become final so long as the action in which it is entered remains pending, and an action remains pending until final determination on appeal.") (citations omitted).

"add[ed] factual details." *Branch Consultants*, 560 F.3d at 378; *see also LaCorte*, 149 F.3d at 232—33 (finding an action "related" even where it "incorporates somewhat different details"). Courts may "simply [] compar[e] the original and later complaints" to determine whether the later complaint alleges the same "material elements" or "essential facts." *Id*. at 234 & n.6.

Here, Relator's prior action and the instant case are not only "related"—they are substantively identical. The actions allege the very same fraud through the same three purported schemes, by the same defendant, involving the same medications—and contain many identical factual paragraphs. Given that, it is not surprising that the Petition also relies on the same deceived "witnesses" whose purported quotes were lifted verbatim from the Federal Action. Both actions also seek recovery under the same statute (TMFPA) on behalf of the same government healthcare program (Texas Medicaid). *Compare, e.g.*, Schwegmann Decl., Ex. C ¶¶ 3–7 *with* Schwegmann Decl., Ex. A ¶¶ 4–8; Schwegmann Decl., Ex. C ¶¶ 83–85 *with* Schwegmann Decl., Ex. A ¶¶ 42–43; Schwegmann Decl., Ex. C ¶¶ 95–105 *with* Schwegmann Decl., Ex. A ¶¶ 50–60; Schwegmann Decl., Ex. C ¶¶ 121–140 *with* Schwegmann Decl., Ex. A ¶¶ 73–92; Schwegmann Decl., Ex. C ¶¶ 171–189 *with* Schwegmann Decl., Ex. A ¶¶ 113–117, 119–132; Schwegmann Decl., Ex. C ¶¶ 194–206 *with* Schwegmann Decl., Ex. A ¶¶ 134–146; Schwegmann Decl., Ex. C ¶¶ 455–459 *with* Schwegmann Decl., Ex. A ¶¶ 191, 199. Because an "investigation into the first claim [the Federal Action] would uncover the same [allegedly] fraudulent activity alleged in the second claim [this action]," *Planned Parenthood of Houston*, 570 F. Appx. at 389, the two cases are "related," and the TMFPA's first-to-file bar compels dismissal. As Judge Godbey held earlier this year, "[p]ermitting a later-filed action alleging the same core facts as a prior-filed FCA action to continue merely because it involves state law claims would create a run-around the FCA's first-to-file bar and frustrate 'the accomplishment and execution of the full purposes and objectives of

13

Congress' evidenced by the FCA's text." *U.S. ex rel. Capshaw v. White*, No. 3:12-CV-4457-N, 2020 WL 707815, at *3 (N.D. Tex. Feb. 12, 2020) (internal citation omitted).

For all of the above reasons, the instant lawsuit was "flawed from the moment [Relator] filed it." *Wood*, 899 F.3d at 171 (quoting *U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 930 (D.C. Cir. 2017)). Accordingly, the TMFPA's first-to-file bar "require[s], in express terms, the dismissal of [Relator's] action." *Albertsons LLC,* No. SA-15-CV-957-XR, 2018 WL 6609571, at *6 (quoting *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436, 442–43 (2016)).

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over this action and it should be dismissed in its entirety. Defendant respectfully requests that the Court hear oral argument on its motion.

Dated: September 2, 2020        Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
cschwegmann@lynnllp.com
Texas Bar No. 24051315
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    (214) 981-3800
Facsimile:    (214) 981-3839

Michael A. Rogoff (*pro hac vice application pending*)
michael.rogoff@arnoldporter.com
Sara L. Shudofsky (*pro hac vice application pending*)
sara.shudofsky@arnoldporter.com
Debra E. Schreck (*pro hac vice application pending*)
debra.schreck@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, New York 10019-9710
Telephone:    (212) 836-8000

14

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Civil Procedure, I certify that a true and correct copy of Eli Lilly and Company's Motion to Dismiss for Lack of Jurisdiction was served by *via electronic mail* on the following counsel of record on September 20, 2020:

W. Mark Lanier (co-lead counsel)
WML@LanierLawFirm.com
Texas State Bar No. 11934600
Kenneth W. Starr
Ken.Starr@LanierLawFirm.com
Texas State Bar No. 24106919
Christopher L. Gadoury
Chris.Gadoury@LanierLawFirm.com
Texas State Bar No. 24034448
Jonathan Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
Texas State Bar No. 24050162
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Parkway N, Suite 100
Houston, Texas 77064
Telephone:     (713) 659-5200

Samuel F. Baxter
sbaxter@mckoolsmith.com
Texas State Bar No. 01938000
Jennifer L. Truelove
jtruelove@mckoolsmith.com
Texas State Bar No. 24012906
**MCKOOL SMITH P.C.**
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone:     (903) 923-9000

Eric B. Halper
ehalper@mckoolsmith.com
(*pro hac vice to follow*)
Radu A. Lelutiu
rlelutiu@mckoolsmith.com
(*pro hac vice to follow*)
**MCKOOL SMITH P.C.**
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9400

**ATTORNEYS FOR RELATOR**

*/s/ Christopher Schwegmann*
Christopher Schwegmann
cschwegmann@lynnllp.com
Texas Bar No. 24051315
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:     (214) 981-3800
Facsimile:     (214) 981-3839
**ATTORNEY FOR DEFENDANT**

15

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Audrey Moore on behalf of W. Lanier
Bar No. 11934600
audrey.moore@lanierlawfirm.com
Envelope ID: 104411797
Filing Code Description: No Fee Documents
Filing Description: RESPONSE TO DENDANTS MOTION TO STRIKE PLAINTIFFS NOTICE OF NONSUIT
Status as of 8/15/2025 12:41 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Wilkerson | | jonathan.wilkerson@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Courtney Walton | | courtney.walton@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Alex J. Brown | | alex.brown@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Emily Olson | | Emily.Olson@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Samuel Baxter | | sbaxter@mckoolsmith.com | 8/14/2025 11:16:04 PM | SENT |
| W MarkLanier | | wml@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Jennifer Truelove | | jtruelove@mckoolsmith.com | 8/14/2025 11:16:04 PM | SENT |
| Cynthia Lu | | cynthia.lu@oag.texas.gov | 8/14/2025 11:16:04 PM | ERROR |
| Susan Miller | | susan.miller@oag.texas.gov | 8/14/2025 11:16:04 PM | ERROR |
| Christopher Gadoury | | chris.gadoury@lanierlawfirm.com | 8/14/2025 11:16:04 PM | ERROR |
| Eric Halper | | ehalper@mckoolsmith.com | 8/14/2025 11:16:04 PM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 8/14/2025 11:16:04 PM | SENT |
| Zeke DeRose | | Zeke.derose@lanierlawfirm.com | 8/14/2025 11:16:04 PM | SENT |
| Gary Vogt | | gvogt@kirkland.com | 8/14/2025 11:16:04 PM | SENT |
| Griffin Vail | | griffin.vail@kirkland.com | 8/14/2025 11:16:04 PM | SENT |

Associated Case Party: ELI LILLY AND COMPANY INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Yaman Desai | | ydesai@lynnllp.com | 8/14/2025 11:16:04 PM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 8/14/2025 11:16:04 PM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 8/14/2025 11:16:04 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Audrey Moore on behalf of W. Lanier
Bar No. 11934600
audrey.moore@lanierlawfirm.com
Envelope ID: 104411797
Filing Code Description: No Fee Documents
Filing Description: RESPONSE TO DENDANTS MOTION TO STRIKE PLAINTIFFS NOTICE OF NONSUIT
Status as of 8/15/2025 12:41 PM CST

Associated Case Party: ELI LILLY AND COMPANY INC

| | | | | |
|---|---|---|---|---|
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 8/14/2025 11:16:04 PM | SENT |
| Kasdin Mitchell | 24135030 | kasdin.mitchell@kirkland.com | 8/14/2025 11:16:04 PM | SENT |
| SCOTT SMOOT | | ssmoot@lynnllp.com | 8/14/2025 11:16:04 PM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 8/14/2025 11:16:04 PM | SENT |

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy SnowHilton | | amy.hilton@oag.texas.gov | 8/14/2025 11:16:04 PM | SENT |
| Lauren Sibley | | lauren.sibley@oag.texas.gov | 8/14/2025 11:16:04 PM | SENT |
| Paige Cheung | | paige.cheung@oag.texas.gov | 8/14/2025 11:16:04 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Andrew Davis on behalf of Andrew Davis
Bar No. 24082898
andrew@lehotskykeller.com
Envelope ID: 104647004
Filing Code Description: Letter
Filing Description: Notice of Related Filings
Status as of 8/21/2025 7:05 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kennon L.Wooten | | kwooten@scottdoug.com | 8/20/2025 6:36:25 PM | SENT |
| Angela Goldberg | | agoldberg@scottdoug.com | 8/20/2025 6:36:25 PM | SENT |
| Jonathan Wilkerson | 24050162 | jonathan.wilkerson@lanierlawfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Melissa Smith | 24001351 | melissa@gillamsmithlaw.com | 8/20/2025 6:36:25 PM | SENT |
| William Peterson | 24065901 | willpete@gmail.com | 8/20/2025 6:36:25 PM | SENT |
| Samuel Baxter | 1938000 | sbaxter@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| Brian McBride | 24002554 | scott.mcbride@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| Zeke DeRose | 24057421 | zeke.derose@lanierlawfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Jennifer Truelove | 24012906 | jtruelove@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| Alex Brown | 24026964 | alex.brown@lanierlawfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Lynne Kurtz-Citrin | 24081425 | lynne.kurtz-citrin@oag.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| Jonathan Bonilla | 24073939 | Jonathan.Bonilla@hhs.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| W. Mark Lanier | 11934600 | jrm@lanierlawfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Heidi Rasmussen | 24090345 | heidi.rasmussen@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| Nadia Burns | 24041176 | nadia.burns@oag.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| Ruth Adams | | radams@scottdoug.com | 8/20/2025 6:36:25 PM | SENT |
| Paige Cheung | 24116193 | paige.cheung@oag.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| Steve McConnico | | smcconnico@scottdoug.com | 8/20/2025 6:36:25 PM | SENT |
| Jordan Kadjar | | jkadjar@scottdoug.com | 8/20/2025 6:36:25 PM | SENT |
| John Dodds | | john.dodds@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| Erica Jaffe | | erica.jaffe@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| W. Mark Lanier | | WML@LanierLawFirm.com | 8/20/2025 6:36:25 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Andrew Davis on behalf of Andrew Davis
Bar No. 24082898
andrew@lehotskykeller.com
Envelope ID: 104647004
Filing Code Description: Letter
Filing Description: Notice of Related Filings
Status as of 8/21/2025 7:05 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| W. Mark Lanier | | WML@LanierLawFirm.com | 8/20/2025 6:36:25 PM | SENT |
| Vivian Egbu | | vivian.egbu@oag.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| Lauren Sibley | | lauren.sibley@oag.texas.gov | 8/20/2025 6:36:25 PM | SENT |
| Steven Strauss | | steven.strauss@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| joel leach | | jleach@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| denise lopez | | dlopez@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| Cynthia  Lu | | cynthia.lu@oag.texas.gov | 8/20/2025 6:36:25 PM | ERROR |
| Angel Devine | | adevine@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| Radu Lelutiu | | rlelutiu@mckoolsmith.com | 8/20/2025 6:36:25 PM | SENT |
| Ryan  McCarthy | | ryan.mccarthy@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| Bradie Williams | | bradie.williams@morganlewis.com | 8/20/2025 6:36:25 PM | SENT |
| Joshua Morrow | | josh@lkcfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Scott Keller | | scott@lkcfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Andrew Davis | | andrew@lkcfirm.com | 8/20/2025 6:36:25 PM | SENT |
| Cathy Hodges | | catherine.hodges@aporter.com | 8/20/2025 6:36:25 PM | SENT |